[Crim. No. 6175.   Second Dist., Div. Two.   Nov. 24, 1958.]

THE PEOPLE, Respondent, v. RAYMOND JAMES
YATES, Appellant.

Harold J. Ackerman, under appointment by the court, for Appellant.

Edmund G. Brown, Attorney General, and John M. Huntington, Deputy Attorney General, for Respondent.

HERNDON, J.—Appellant was convicted by jury of three separately charged crimes: (1) second degree robbery; (2) forgery of a certain $1,000 postal savings certificate (which was one of the numerous items of property taken from the victim of the robbery) ; and (3) uttering and passing a certain forged and fictitious check. Appellant at first denied, but

later admitted, two prior felony convictions upon which he served prison terms: forgery in Ohio and violation of Penal Code, section 476, in California. Having been sentenced to state prison, appellant appealed from the judgment and sentence. Briefly stated the more salient facts of the case are as follows:

On December 25, 1956, Mr. and Mrs. Theodore Carson resided at 1875 Lewis Street, Long Beach. On the evening of that day Mrs. Carson was at home alone. Shortly after 8 p.m. she heard a knock at the door. When she asked who was there she received the response "Telegram." As she opened the door to receive the telegram, three colored men forced their way into the room. One of the men grabbed her around the neck, choked her and asked her "where it was." While she was held in the living room she heard the other two men pulling drawers and ransacking in the bedroom. Later she was shoved into the front bedroom. There she observed one of the men standing looking in a drawer. She later testified that appellant resembled one of the men in height.

Among the items of property carried away by the robbers were two watches, a camera, binoculars, some $300 in currency and a strong box containing jewelry, two $1,000 postal savings certificates, the "pink slip" to Mr. Carson's car, Mr. Carson's army discharge papers, and other papers.

The following morning at about 10 o'clock appellant presented one of the postal savings certificates for cashing at the United States Post Office in Long Beach. Mrs. Blodgett, a postal employee, identified appellant as the person who presented the postal savings certificate for cashing. She asked him if he wanted a treasury check and he said "No," that he wanted cash because he was going to buy a car. In her presence he signed the name "Theodore Carson" and wrote in Carson's address. She thereupon gave him the money for the certificate. The postal records show that the certificate was purchased by Mr. Carson on July 13, 1955.

On March 11, 1957, appellant presented a check to a cashier at the J. W. Robinson Company in Los Angeles. The check was endorsed "Theodore Carson." When asked for identification, appellant presented an automobile pink slip. The cashier noted on the reverse of the check the car license number which corresponded with that of Mr. Carson.

A handwriting expert testified that he compared exemplars of appellant's signature with the signatures appearing on the

postal certificate and the check above referred to and expressed his opinion that the same person who wrote the exemplar signatures had signed the endorsements on the postal savings certificate and the check.

Mr. Belarde, the assistant manager of Ralph's Grocery Company in Los Angeles, saw appellant in the store on March 16, 1957 at about 7 o'clock p.m. Two days later one of the store employees handed Mr. Belarde a wallet which he had found in the store. Observing that the wallet contained papers, Mr. Belarde delivered it to the police. It was found to contain the pink slip to Mr. Carson's car, Mr. Carson's army discharge and other articles which had been taken in the robbery. The wallet also contained a union card, a weekly pass of the Cleveland Transit system, a pawn ticket, three pictures of colored women and a telegram addressed to Raymond J. Yates. At the police station on March 19, 1957, appellant told Officer DeVine that the wallet belonged to him and that he must have lost it at Ralph's Grocery Store. When asked about the Carson papers, appellant told Officer DeVine that he would not tell him anything about Carson's papers.

Appellant took the stand and denied participation in any of the activities constituting the crimes charged. He contradicted most of the incriminating testimony. He testified that on December 25th from approximately 5 p.m. to 10 p.m. he was working at the Plush Horse Restaurant in Long Beach. Time cards are kept at said restaurant and when an employee comes to work he punches in and when he leaves he punches out. Appellant's time card for December 25th showed that he punched in at 5:05 p.m. and punched out at 10:40 p.m. There was no other corroboration of appellant's testimony that he was working at the time of the robbery. There appeared to be no means of verifying the identity of the person who actually punched the time clock on the night in question.

Appellant's first contention is that the state court had no jurisdiction over the crime of forging a United States postal savings certificate charged in Count II or the crime of forging the endorsement on the check as charged in Count III. He contends that the state has no power to punish a crime against the laws of the United States. It is true, of course, that a state cannot punish crimes against the United States as such. However, where the same act constitutes two offenses, one against the state and one against the United States, it may be punished in each jurisdiction under its law.

(*In re Dixon*, 41 Cal.2d 756, 763 [264 P.2d 513]; 14 Cal.Jur. 2d 296-297, § 97.) It is manifest that the acts charged against appellant constituted crimes as defined by the provisions of the California Penal Code referred to in the information.

■ Moreover, there is no indication that the United States Post Office where the crime of forging the signature of the payee on the postal savings certificate was committed was under the exclusive jurisdiction of the federal government in the sense that the state had surrendered its jurisdiction to punish for state crimes committed at that location. There is no showing that the federal government had accepted any surrender of jurisdiction. In the absence of any showing to the contrary, it is presumed that no such surrender and acceptance have been made. (*People* v. *Brown*, 69 Cal.App.2d 602, 604-605 [159 P.2d 686]; 14 Cal.Jur.2d 301-302, § 99.)

■ Appellant's contention that the trial for the forgery charged in Count III should have been held in the city of Los Angeles rather than in the city of Long Beach is patently frivolous. Appellant was properly tried in the Superior Court of Los Angeles County. "It has long been held that the superior court in a particular county is a single entity and its division into departments is simply for the convenience and expedition of business." (*People* v. *Connolly*, 103 Cal.App. 2d 245, 248 [229 P.2d 112]; see *Thomasian* v. *Superior Court*, 122 Cal.App.2d 322, 332 [265 P.2d 165].)

■ Our recital of the evidence as above set forth is in itself a sufficient refutation of appellant's contention that the evidence was insufficient to sustain the conviction on the robbery count. With reference to the sufficiency of the evidence to identify appellant as one of the robbers, it is to be remembered that appellant was positively identified as being the person in possession of part of the stolen property and engaged in forging a signature upon one of the stolen certificates within a few hours after the perpetration of the robbery.

■ As stated in *People* v. *Alexander*, 78 Cal.App.2d 954, 956-957 [178 P.2d 813]: "While such possession would not, standing alone, suffice to determine the possessor's guilt, yet as evidence, its quality is of such high degree that only slight corroborative proof of other inculpatory circumstances would warrant a conviction." (See also *People* v. *Sorrentino*, 146 Cal.App.2d 149, 160 [303 P.2d 859]; *People* v. *Mora*, 139 Cal. App.2d 266, 271-272 [293 P.2d 522]; *People* v. *Bonner*, 5 Cal. App.2d 623, 630-632 [43 P.2d 343].)

■ The identification of the defendant need not be positive. ■ The sufficiency of the evidence of identification is generally a question for the trier of the facts. (*People* v. *White*, 44 Cal.App.2d 183, 185 [112 P.2d 60] ; *People* v. *Shaheen*, 120 Cal.App.2d 629, 637 [261 P.2d 752] ; *People* v. *Addington*, 43 Cal.App.2d 591, 593 [111 P.2d 356] ; *People* v. *Richardson*, 81 Cal.App.2d 866, 870 [185 P.2d 47].) ■ Testimony that a defendant ''resembles'' the robber (*People* v. *Richardson, supra*) or ''looks like'' the same man (*People* v. *Spellings*, 141 Cal.App.2d 457, 460 [296 P.2d 889] ) has been held sufficient.

■ It may be conceded that the mere fact that defendant was found in possession of the stolen property would not be sufficient, standing alone, to warrant his conviction. However, there is the very significant additional fact that, within a few hours after the robbery, he was engaged in the act of converting the loot into cash by the felonious process of forging the victim's signature. The obvious and most reasonable inference to be drawn from this well-proven fact is that defendant had participated in the robbery and in seeking to convert some of the stolen property into a more usable form he was in a very real sense still engaged in effectuating the same criminal transaction. As stated in *People* v. *Majors*, 47 Cal.App. 374, 375 [190 P. 636] : ''Conceding that mere possession by defendant of the stolen property after the time of the burglary would not be sufficient to warrant his conviction, it seems clear that such possession, taken together with his sale of the property, under a false name and for a grossly inadequate price, in the absence of any explanation—and none appears—are circumstances quite sufficient to sustain the verdict.'' (See also *People* v. *Lang*, 142 Cal. 482, 484-485 [76 P. 232] and *People* v. *Russell*, 120 Cal.App. 622, 625-626 [8 P.2d 209].)

Coupled with the victim's partial identification of defendant as one of the perpetrators of the crime, the evidence is more than adequate to sustain the conviction. (*People* v. *Mora, supra*, 139 Cal.App.2d 266, 271; *cf. People* v. *Buratti*, 96 Cal.App.2d 417, 419 [215 P.2d 500].)

We have examined each and all of appellant's other assignments of error and find them to be without semblance of merit. The record shows overwhelming evidence of defendant's guilt and demonstrates that he was accorded a fair and impartial trial.

The appeal from the sentence is dismissed (*People* v. *Gallardo*, 41 Cal.2d 57, 60 [257 P.2d 29]) and the judgment is affirmed.

Fox, P. J., and Ashburn, J., concurred.

A petition for a rehearing was denied December 19, 1958, and appellant's petitions for a hearing by the Supreme Court and for a writ of certiorari were denied January 21, 1959.