[Crim. No. 6627.   Second Dist., Div. One.   Aug. 5, 1960.]

THE PEOPLE, Respondent, v. ARTHUR JACKSON et al., Defendants; WILLIE GENE McGEE, Appellant.

Willie Gene McGee, in pro. per., for Appellant.

Stanley Mosk, Attorney General, and William E. James, Assistant Attorney General, for Respondent.

LILLIE, J.—This is an appeal from a judgment of conviction and order denying a motion for new trial. Defendant, appellant herein, and two codefendants, Jackson and Roberts, were charged with five counts of robbery in violation of section 211, Penal Code; and it was alleged in connection with each that they were armed with deadly weapons. A jury found them guilty of first degree robbery on all counts and armed as charged. Only defendant McGee appeals.

Appellant has appeared in propria persona. The text of his brief consists of a disorganized running account of certain incriminating testimony, interspersed with numerous suggestions of error and various citations of authority; however, we have ascertained his main points on appeal to be that—the evidence is insufficient to connect him with the commission of the robberies, it was error for the trial court to admit in evi-

dence a knife (Exhibit 1), certain instructions relating to circumstantial evidence should have been given, and he was denied due process by virtue of a six-day detention before having been taken before a magistrate.

Relative to his first claim, we accept as established all evidence, and all reasonable inferences to be drawn therefrom, in favor of the judgment of conviction (*People* v. *Jackson*, 152 Cal.App.2d 397 [313 P.2d 931]). The evidence discloses the commission of five first degree robberies—the first four on June 24, 1958, at Alben Sales, Inc., and the fifth at the Avalon Gift Shop on July 2, 1958. Around 10:10 a.m. on June 24, at least three men, including this appellant, Jackson and Roberts, entered the premises of Alben Sales, Inc. armed with a knife and gun. Jackson made inquiry at the cashier's window while appellant entered the office pulling a knife from his coat and ordering the manager, Alexander Spitzer, and a secretary, Mary Diblosi, to lie down. Jackson tied Spitzer and later took his wallet containing $1,600 (Count 1). A man entered the bookkeeping office where Ben Hersh, a salesman, was counting money. When asked for the money, Hersh, thinking it was a joke, did not turn around, whereupon he was knocked unconscious and $400 was taken from him (Count 4); $20 was taken from the bookkeeper, Emanuel Rosenberg (Count 3). Roberts stuck a gun into the side of Jesse White, a truck driver who was putting up a sign at the door, and told him to go to the rear of the store. At that time, another salesman, Bernard Friedman, returning from a warehouse outside and finding the door locked, rattled the knob and was admitted by Roberts who, with a gun, forced him to the rear of the store, passing appellant who was watching the office. White and Friedman were ordered to lie on the floor and $160 was taken from Friedman (Count 2).

On July 2, three men entered the Avalon Gift Shop and looked around; the owner, Mrs. Davis, was present with two customers, Wilma Curry and Festeva Mathis. Mrs. Davis walked over to wait on Jackson. He seized her, poking a gun into her stomach, and directed the two men to take the women customers to the rear of the store. As he pushed Mrs. Davis from the shop into the rear living quarters, she saw the back of appellant as he was locking Mrs. Mathis in the bathroom. Appellant then came up behind Mrs. Davis, grasped her against him and started to open a straight-edge razor; he pushed her into the bedroom where Mrs. Curry was being

held. Mrs. Davis escaped out of another door and called police. $9.35 was missing from the cash register (Count 5).

On August 7, police, acting on information obtained from Detective Wright, went to the home of Alva Williams with a photograph of appellant. After knocking on the door, for some time they were finally admitted by Mrs. Williams. While talking to her in the living room, one of the officers, through an open door, observed appellant in bed. He, then Mrs. Williams, were arrested and a search disclosed a knife under appellant's mattress which they left there, unaware that a knife had been used in the first robbery. The next day appellant went with officers to the home of Mrs. Bolton, Mrs. Williams' sister, from where they all proceeded back to Mrs. Williams' house where Mrs. Bolton opened the door and officers removed the knife.

In his defense appellant testified at the trial denying that he was in any way involved in the robberies, but admitted that Exhibit 1 was found under his mattress at the time he was arrested.

In considering appellant's claim that the evidence was insufficient to connect him with the robberies, we relate certain identification testimony placing him at the scene as a participant. Relative to those occurring on June 24 at Alben Sales, Inc. (Counts 1 through 4), Mr. Friedman testified that during the robbery he saw appellant McGee "standing with his back to the front door, watching the office" and that he "passed by him maybe a foot" away when ordered to go to the rear of the store by codefendant Roberts. He described appellant's appearance and testified "(T)he only thing I saw when I passed by is the face. In fact, he looked at me. Our eyes really met. He looked at me at the same time I looked at him." On cross-examination it was suggested to him by defense counsel that appellant might have been there on business, but Mr. Friedman testified further that it did not look to him "like he was there on business." This query obviously did not go to the identification of appellant but to his purpose in being in the store. Mary Diblosi, although unable to make positive identification of appellant as one of the robbers, testified that "the (his) profile is similar" to that of the man who held the knife (which she identified as looking like Exhibit 1) on her during the robbery, although she could not be sure. As to the robbery on July 2 (Count 5) at the Avalon Gift Shop, Mrs. Davis testified that when Jackson pushed her through the living room into the kitchen she saw a man who "was either him

(appellant) or someone that looked exactly like him'' locking the other woman into the bathroom and that he said to Jackson: ''Shut her up, even if you have to kill her''; that Jackson then shoved her over to this man (appellant) and he came up behind her and pinned her against him. Mrs. Mathis testified that she was not sure, but that appellant looked like the man. On cross-examination she was reminded that at the preliminary hearing she did not testify that ''this fellow with the razor looked like Mr. McGee'' to which she replied: ''No, I didn't, but since then it seems to me that his face has come to me, because during that time I was so excited, and after seeing him it seems to me that I can remember that face more clearly now than I did at the time I was here before.''

Appellant argues that inasmuch as not all of the witnesses were able to testify that he was at the scene of the robberies, other witnesses were uncertain in their identification of him and some could only testify that he resembled one of the robbers, the evidence was insufficient to connect him with the commission of the crimes. At the outset, the record fails to support such a factual argument for one of the witnesses (Friedman) definitely identified appellant; and although several could not make positive identification, they described the robber as ''similar'' to appellant, or one ''who looked exactly like him'' or ''like him''; and legally, such a position has no merit, for weakness of identification and uncertainty of memory do not render evidence of identity worthless but merely constitute factors for the consideration of the trier of fact. And any factual finding on the issue of identification this court may not disturb unless it can be said that the evidence thereon is so weak as to constitute no evidence at all (*People* v. *Farrington*, 213 Cal. 459, 464 [2 P.2d 814]; *People* v. *Erno*, 195 Cal. 272 [232 P. 710]; *People* v. *Newman*, 102 Cal.App.2d 302 [227 P.2d 470]; *People* v. *Shaheen*, 120 Cal. App.2d 629 [261 P.2d 752]; *People* v. *Waller*, 14 Cal.2d 693 [96 P.2d 344]; *People* v. *Braun*, 14 Cal.2d 1 [92 P.2d 402]; *People* v. *Kittrelle*, 102 Cal.App.2d 149 [227 P.2d 38]; *People* v. *Mahoney*, 146 Cal.App.2d 485 [304 P.2d 73]). ''The strength or weakness of the identification, the incompatibility of and discrepancies in the testimony, if there were any, and the uncertainties of witnesses in giving their testimony were matters solely for the observation and consideration of the jurors in the first instance, and for the consideration of the trial court on motion for a new trial.'' (*People* v. *Farrington*, 213 Cal. 459, 463 [2 P.2d 814].)

568

■■ Positive identification free from doubt, often difficult under the best circumstances, is not required (*People v. Waller*, 14 Cal.2d 693 [96 P.2d 344]; *People v. Shaheen*, 120 Cal.App.2d 629 [261 P.2d 752]; *People v. Yates*, 165 Cal. App.2d 489 [332 P.2d 314]); nor is it necessary that all those involved in a robbery identify the participants, for not all persons may have been in a position to adequately see or hear and, further, fear and nervousness often cause faulty memory or confusion. ■■ No judgment will be reversed because of a failure of memory of one or more witnesses where there is substantial testimony in support of identity (*People v. Newman*, 102 Cal.App.2d 302 [227 P.2d 470]); the testimony of one witness is sufficient to support a verdict if such testimony is not inherently incredible (*People v. Alexander*, 92 Cal.App. 2d 230 [206 P.2d 657]; *People v. Newman, supra,* 102 Cal. App.2d 302); and testimony that a defendant resembles the robber (*People v. Waller*, 14 Cal.2d 693 [96 P.2d 344]; *People v. Fleming,* 58 Cal.App.2d 37 [136 P.2d 88]; *People v. Richardson,* 81 Cal.App.2d 866 [185 P.2d 47]), or looks like the same (*People v. Spellings,* 141 Cal.App.2d 457 [296 P.2d 889]; *People v. Yates,* 165 Cal.App.2d 489 [332 P.2d 314]), has been held sufficient. ■■ The uncertainty of recollection, qualification of identity and lack of positiveness in the testimony of the several witnesses complained of by appellant were matters going to the weight of the evidence and the credibility of witnesses (*People v. Avery,* 35 Cal.2d 487 [218 P.2d 527]; *People v. Arenas,* 128 Cal.App.2d 594 [275 P.2d 811]) and for the observation and consideration, and directed solely to the attention, of the jury in the first instance and then the trial court upon the motion for new trial (*People v. Shaheen,* 120 Cal.App.2d 629 [261 P.2d 752]).

■■ Tested by the foregoing rules the evidence of the identification of appellant McGee as one of those present at the scene of the robberies is sufficient to support the verdict of guilt on all counts.

Relative to appellant's contention that the trial court erred in admitting in evidence Exhibit 1, we briefly refer to testimony relating to the identification of the knife and its discovery in the possession of appellant. Mary Diblosi testified that Exhibit 1 "looks like" the knife held on her during the robbery by the person whose profile is similar to that of appellant; and Officer Gelb testified to finding it under the mattress of a bed appellant was occupying in the house of a Mrs. Williams at the time of his arrest. The evidence dis-

closes that Officer Gelb and his partner, armed with appellant's photograph and information from Detective Wright that the victims had identified the photograph as "the man" who robbed them, and that a red haired woman with whom appellant was residing was observed driving the "getaway" car after the Alben Sales robbery, went to the address of Alva Williams; that after persistent knocking on the door, Mrs. Williams, who fitted the description given to the officers by Detective Wright, finally responded; that they told her they wanted to talk to her and she replied she would talk to them if they would "stop banging on the door," thereupon admitting them to the house; that while they were talking to her in the living room, one of the officers through an open door observed appellant in bed in a bedroom and recognized him; that they immediately went into the bedroom where appellant gave his name as Williams but finally admitted it was McGee; that he ordered them out and a scuffle ensued; and that they subdued him, arrested and handcuffed him and then arrested Mrs. Williams, after which they searched the bed he had occupied and found the knife (Exhibit 1) under the mattress.

Appellant claims the search and seizure were illegal for the officers were without right to enter the premises of Mrs. Williams; there was no probable cause for her or his arrest; and the knife found under the mattress, even if the result of a valid search, was left on the premises and not taken until later.

▮▮▮ Acting on information that both Mrs. Williams and appellant were robbery suspects and living together at her home, police went there to talk to them. It is not improper for officers to seek interviews with suspects, and there appears to be nothing unreasonable about police going to a person's home to question him (*People* v. *Michael,* 45 Cal.2d 751 [290 P.2d 852] ; *People* v. *Jaurequi,* 142 Cal.App.2d 555 [298 P.2d 896] ; *People* v. *Mendoza,* 145 Cal.App.2d 279 [302 P.2d 340] ). Officers knocked on the door and, upon seeing her, they recognized her as the person who fit the description of the red haired woman accomplice. When they told her that they "would like to come in and talk to her" she said that they could if they "would stop banging on the door." She opened the door and let them in. When the officers entered the living room they neither arrested her nor searched the premises, but simply engaged her in a conversation during which one of the officers recognized appellant, through an open door, in bed in the bedroom. At first he denied his identity, then admitted the same, ordered the officers out of the house and became involved

in a scuffle with them. When they subdued him, they arrested and handcuffed him. Then Mrs. Williams was arrested and the officers made the search, finding Exhibit 1.

The officers had neither a warrant of arrest nor a search warrant in their possession. The evidence factually supports neither a finding that the officers lacked propriety in coming to Mrs. Williams' home or unlawfully entered, nor one that she was arrested prior to the arrest of appellant. Inasmuch as officers testified that they had knowledge that two robberies had been committed, that a red haired woman who fitted the description of Mrs. Williams was known to have driven the car in the Alben Sales robbery, that appellant had been identified from his photograph by the victim as a participant in the robbery; that appellant resembled the photograph they had in their possession; that he denied his identity then admitted it and a scuffle resulted, we conclude that the trial court properly found that police had reasonable cause to believe appellant had committed a felony. (Pen. Code, § 835; *People* v. *Boyles,* 45 Cal.2d 652 [290 P.2d 535] ; *People* v. *Malone,* 173 Cal.App.2d 234 [343 P.2d 333].)

Most of the information relied upon by the officers was obtained from Detective Wright, who received the same from the victims and Sergeant Williams. On cross-examination Detective Wright testified that Sergeant Williams told him the victims had identified appellant from his photograph, but no attempt was made by defense counsel to develop anything further in this connection or to have him identify any other informant; and no objection to his testimony or motion to strike the same was made. Nor does the record show that appellant made any attempt to call either Sergeant Williams or any other person whom he might have believed was an informant. Appellant is now hardly in a position to complain that "an informant" was not identified, or called to testify (*People* v. *Williams,* 172 Cal.App.2d 345 [341 P.2d 741]). In any event, whether police officers had a reasonable ground for arresting appellant is a question of fact for the trial court (*People* v. *Boyles,* 45 Cal.2d 652 [290 P.2d 535]), the determination of which is not here subject to reversal (*People* v. *Newland,* 15 Cal.2d 678 [104 P.2d 778] ; *People* v. *Dawson,* 150 Cal.App.2d 119 [310 P.2d 162]).

It having been determined, and properly so, by the trial court that the information held by the arresting officers upon their arrival at the dwelling of Mrs. Williams and what occurred after their voluntary admittance into her home, was sufficient to constitute reasonable cause for the arrest

of the appellant, and that the arrest was lawful; then the search, even though without a warrant, was valid as incident to the arrest, reasonable and made in good faith, and the evidence seized related to the crime (*People* v. *Winston*, 46 Cal.2d 151 [293 P.2d 40]; *People* v. *Coleman*, 134 Cal.App.2d 594 [286 P.2d 582]).

Returning briefly to the original entry on the premises and appellant's claim that it was improper, our attention is called to the case of *People* v. *Colonna*, 140 Cal.App.2d 705 [295 P.2d 490]. It is argued that if the civil rights of the occupant of the premises where the arrest took place are violated, the violation renders the search and seizure invalid whether or not appellant's constitutional guarantees were violated. We deem *People* v. *Colonna*, 140 Cal.App.2d 705 [295 P.2d 490], not here applicable, for the manner in which the officers entered the apartment in that case was far different than in the one at bar. Arresting officers let themselves into the premises with a pass key and entered a room in which appellant, the occupant and evidence were located; and there was no showing that the officers were invited on the premises, were in pursuit of a suspect or were acting on any information. In the instant case the trial court, as it had a right to do, accepted as true the officers' testimony relative to their admittance to Mrs. Williams' home and rejected the defense version of what occurred. The trial judge found that she voluntarily let the officers into her home and that she was not arrested until after appellant's arrest; and the record supports such a finding. Neither her constitutional rights, nor those of the appellant were in any way violated.

Appellant asserts that inasmuch as the officers failed to take Exhibit 1 at the time of his arrest, that even though the original search may have been valid, it was improper for them to return to the premises and remove the knife, for entry into the house constituted an illegal search and the seizure of the weapon was not made pursuant to any arrest. After the officers found Exhibit 1 under defendant's mattress, pursuant to a valid search as incidental to and following his lawful arrest and that of Mrs. Williams, they did not take the knife because they were then not aware that such a weapon had been used in the Alben Sales robbery. However, they subsequently learned about the knife and that it was related directly to the crime. The following day appellant went with police officers to the home of Mrs. Williams' sister, Mrs. Bolton, from where they all proceeded to Mrs. Williams'

house. When Mrs. Bolton arrived she opened the door and admitted the officers who took the knife. ▮ It is a rule that when an article or a piece of evidence is related to the crime and officers could have taken it with them when they took the accused into custody, the fact that they did not do so but later recovered the item will not constitute a seizure arising out of an illegal search. In *People* v. *Stewart,* 144 Cal.App.2d 555 [301 P.2d 301], a similar situation arose and the court held at page 559: "The eyedropper, needle and spoon containing heroin were related to the crime charged. Sergeant Gibbs could have lawfully taken these articles with him when he took the defendant to the city jail and the fact that he went back to the defendant's residence, where he was again admitted by the landlady, and retrieved them did not in our opinion constitute an unreasonable and unlawful search and seizure."

▮ Inasmuch as the officers legally found the knife in the first instance after a lawful arrest, they later learned that the knife was related to the robbery and that it had been identified by one of the victims as looking like the one held on her, we find no cause for complaint regarding the admission of the knife.

▮ Appellant's claim that the trial court erred in refusing to give circumstantial evidence instructions and that those given were inadequate, affords no ground for reversal for several reasons. Neither the instructions given nor refused are included in the record before us, and in any event such instructions were not necessary because direct evidence of appellant's guilt is clear. ▮ Seeking a reversal for instructions rejected, it is incumbent on appellant to cause them to be included in the record (*People* v. *Pierrc,* 178 Cal.App.2d 585 [3 Cal.Rptr. 290]; *People* v. *Rivera,* 123 Cal.App.2d 358 [266 P.2d 810]; *People* v. *McClure,* 133 Cal.App.2d 631 [284 P.2d 887]). Further, the proof was not entirely circumstantial and in such a case it is not error to refuse such instructions. ▮ ". . . (W)here the proof is not entirely circumstantial, it is not error to refuse an instruction requiring the jury to adopt that interpretation which would 'admit of defendant's innocence and to reject that which would point to the guilt of the accused.' (*People* v. *Savage,* 66 Cal.App.2d 237, 247 (152 P.2d 240).)" (*People* v. *Rivera,* 123 Cal.App.2d 358, 360 [266 P.2d 810]; *People* v. *Shaheen,* 120 Cal.App.2d 629 [261 P.2d 752]; *People* v. *Alexander,* 92 Cal.App.2d 230 [206 P.2d 657]). The rule relating to instructions on circumstantial evidence

authorizes their use only where substantially all of the evidence is circumstantial (*People* v. *Schwab*, 136 Cal.App.2d 280 [288 P.2d 627]); and such is not true of the controversy here involved.

■ Considerable mention is made by appellant in both his opening and closing brief that he was held for six days before being taken before a magistrate which violated his constitutional guarantee of due process. During the trial, counsel for appellant made an offer of proof that he was arrested on August 7 but was not taken before a magistrate until August 13. Although counsel contended that due process had been violated he offered nothing further in this regard. The offer was rejected by the trial court. Upon consideration of the entire record we deem both the trial court's rejection of this offer of proof and the exercise of its discretion in denying appellant's motion for new trial proper. Although section 825, Penal Code, provides that the defendant must in all cases be taken before a magistrate without unnecessary delay and in any event within two days after his arrest, excluding Sundays and holidays, before a violation of this section can require a reversal of a judgment of conviction it is incumbent upon appellant to show that through this wrongful conduct he was deprived of a fair trial (*People* v. *Guarino*, 132 Cal.App.2d 554 [282 P.2d 538]), or otherwise suffered prejudice as a result thereof (*People* v. *McCrasky*, 149 Cal. App.2d 630 [309 P.2d 115]; *People* v. *Blankenship*, 171 Cal. App.2d 66 [340 P.2d 282]; *People* v. *Smith*, 175 Cal.App.2d 396 [346 P.2d 484]). The record before us affords no basis for an inference of any such prejudice or that appellant was deprived of a fair trial; nor is there anything in appellant's offer of proof in the trial court showing other than that he was detained six days. A mere violation of section 825, Penal Code, will not aid appellant without a further showing of prejudice suffered by him as a result of his detention.

Both appellant's opening and closing briefs contain various other suggestions of error which bear no reference to the record, elaboration or argument. After a careful consideration of the record we find no support for his various claims (*People* v. *Justice*, 167 Cal.App.2d 616 [334 P.2d 1031]; *People* v. *Cuthbertson*, 176 Cal.App.2d 393 [1 Cal.Rptr. 435]) and deem them to be wholly without merit.

For the foregoing reasons the judgment and the order denying motion for new trial are affirmed.

Wood, P. J., and Fourt, J., concurred.