[Crim. No. 2075.   Fourth Dist.   May 25, 1965.]

THE  PEOPLE, Plaintiff  and  Respondent, v.  ROBERT
CARBALLO, Defendant  and  Appellant.

Fred H. Dill, under appointment by the District Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Jack K. Weber, Deputy Attorney General, for Plaintiff and Respondent.

COUGHLIN, J.—The defendant Carballo and four other individuals, i.e., Calderilla, Bustillos, Muratalla and Abarca, were indicted for selling heroin, a violation of Health and Safety Code, section 11501, allegedly occurring on April 23, 1963. All of the persons charged, except Muratalla, were convicted. The defendant Carballo, under appropriate proceedings, was committed to the California Narcotic Rehabilitation Facility pursuant to section 6451 of the Penal Code; approximately six months later was returned from the facility under certification by the superintendent as a person not fit for confinement or treatment therein; was sentenced to imprisonment in the state prison; and appealed from the judgment of conviction. The grounds for appeal are that (1) the evidence is insufficient to support the verdict finding him guilty of the offense charged; (2) the court erred in the rejection of evidence offered by him; (3) he was not adequately

represented by counsel at the time of trial; and (4) his return to the trial court for pronouncement of judgment was improper.

Where the sufficiency of the evidence to support a verdict is attacked on appeal, that version thereof most favorable to the conclusion reached must be accepted by the appellate court. (*People* v. *Daugherty,* 40 Cal.2d 876, 885 [256 P.2d 911].) The facts herein will be stated accordingly.

On April 23, 1963, an undercover narcotics agent named Nanez telephoned the defendant Calderilla, and arranged for the purchase of an ounce of heroin for $300. Pursuant to instructions from Calderilla, the sale was to be effected at an abandoned dump. Nanez and another narcotics agent, Orosco, drove to the dump; saw Calderilla and the other defendants who had arrived in a Cadillac; parked their car at a place where they could observe the occupants of the Cadillac; noted that Calderilla and Bustillos were in the Cadillac; and also noted that Carballo, appellant herein, Abarca, who had a rifle, and Muratalla were standing in back of it. Nanez, who previously had been searched by Orosco for the purpose of determining that he had no narcotics in his possession, was given $300 by the latter; left the automobile in which he had been riding; approached the Cadillac, where he contacted Calderilla; gave Calderilla the $300; and received instructions that the narcotic he was to receive in return was hidden near a pole on the side of the dump. After receiving these instructions, Nanez walked toward a pole at which time Orosco heard the men in back of the Cadillac laugh and shout: "Not that pole, the other pole." Nanez changed his course and picked up a package at the "other pole," which later was determined to contain heroin. Orosco identified appellant as one of the three men standing in back of the Cadillac. Subsequently, i.e., on April 26th, another purchase was made from Calderilla at the same dump in the presence of defendants Carballo and Abarca, both of whom were outside a Plymouth automobile driven by Calderilla. On the latter occasion, after Nanez had obtained the heroin he waved toward the Plymouth automobile at which time the appellant and Abarca got into that car. Previously, i.e., on March 26th, Orosco, using Nanez as an agent, purchased heroin from Calderilla at the latter's residence. There was testimony respecting other sales by other defendants on other occasions.

The appellant denied that he was present at any of

the sales, and specifically testified to an alibi respecting his whereabouts at the time of the sale on April 23rd. He claims that the testimony of Orosco identifying him as being present on the latter occasion is insufficient to support the verdict. However, his contention goes to the weight rather than to the substantial nature of the evidence. The testimony in question, which we need not detail, is legally sufficient to support his identification under the rules announced and applied in *People v. Daniels*, 223 Cal.App.2d 441, 445 [35 Cal.Rptr. 890]; *People v. Wiest*, 205 Cal.App.2d 43, 45 [22 Cal.Rptr. 846]; *People v. Jackson*, 183 Cal.App.2d 562, 567 [6 Cal.Rptr. 884]; *People v. Richardson*, 81 Cal.App.2d 866, 870 [185 P.2d 47].)

Appellant also claims that the evidence does not establish he was a participant in the sale with which he was charged. However, under the rules stated and applied in *People v. Belenger*, 222 Cal.App.2d 159, 162-167 [34 Cal.Rptr. 918]; *People v. Fleming*, 191 Cal.App.2d 163, 168 [12 Cal. Rptr. 530]; *People v. Villa*, 156 Cal.App.2d 128, 134 [318 P.2d 828]; *People v. Moore*, 120 Cal.App.2d 303, 306 [260 P.2d 1011], the facts heretofore noted sufficiently support the conclusion that he aided and abetted the offense perpetrated by Calderilla. Under these circumstances he was chargeable as a principal. (Pen. Code, § 31.)

Contrary to the further contention by Carballo, there is substantial evidence from which it may be inferred that both he and Calderilla had knowledge of the narcotic nature of the substance sold, and that he also had knowledge of the latter's wrongful purpose in the premises. The guilty knowledge requirements precedent to an application of the aiding and abetting theory which supports his conviction are adequately supplied by the evidence. (See *People v. Belenger, supra*, 222 Cal.App.2d 159, 163.)

In his opening statement appellant indicated his intention to prove that Nanez, who had not been called as a witness, was a daily user of narcotics. An objection to this statement was sustained and the jury instructed to disregard it. Thereafter appellant offered to prove that Nanez had entered a plea of guilty to the offense of using heroin; that thereafter Nanez was permitted to withdraw his plea of guilty and in lieu thereof to enter a plea of not guilty; and that the case in which such pleas had been entered had not yet been tried. An objection to this offer of proof was sustained. Appellant contends that the action of the trial court in the premises was error. Proof that Nanez was a narcotic

user was not material to any issue in the instant case. It did not tend to establish that appellant was a participant in the offense with which he was charged or that the offense had not been perpetrated by Calderilla. It could not be used for impeachment purposes because Nanez had not been called as a witness. The mere fact that an undercover agent who assisted a law enforcement officer in the detection of a crime was a narcotics user, under the circumstances of this case, had no bearing on appellant's guilt or innocence. (Compare *People* v. *Lo Cigno,* 193 Cal.App.2d 360, 379 [14 Cal.Rptr. 354].)

The attorney who represented appellant at the trial of the case was appointed by this court to represent him on appeal and, at the request of appellant, presents the latter's contention that he was not adequately represented at the trial. We have examined the record and have determined that, under the rule stated and applied in *People* v. *Wein,* 50 Cal.2d 383, 410 [326 P.2d 457], there is no merit to this contention.

Following appellant's placement at the California Narcotics Rehabilitation Facility, the superintendent thereof, under the authority vested in him by the Director of Corrections (Pen. Code, § 5055), certified that appellant and the other convicted defendants, all of whom had been placed at the facility, were not fit subjects for confinement and treatment therein. The certification contained the following statement: ''In view of the fact that these cases involve large scale narcotic trafficking, commercial-like criminal activity and reflect a degree of violence potential, it is felt they do not fit within the overall framework of the California Rehabilitation Center concept,'' and referred the defendant to the trial court pursuant to Penal Code, section 6453. The section in question provides that: ''If at any time after 60 days following receipt of a person at the facility, the Director of Corrections concludes that the person, because of excessive criminality or for other relevant reason, is not a fit subject for confinement or treatment in such narcotic detention, treatment and rehabilitation facility, he shall return the person to the court in which the case originated for such further proceedings on the criminal charges as that court may deem warranted.'' The conclusion of the superintendent respecting the fitness of appellant for confinement or treatment in the rehabilitation facility was based upon the latter's trafficking in narcotic distribution prior to his placement therein and upon his prior record. He contends that the Director of Corrections, in determining

whether, pursuant to section 6453, a person committed to a narcotic rehabilitation facility is a fit subject for confinement or treatment therein, is limited to a consideration of the conduct of that person after placement, and may not consider his conduct prior to placement. However, the language of the section does not justify this interpretation. The provisions authorizing the Director of Corrections to conclude that a person placed in the facility is not a fit subject for confinement or treatment therein ''because of excessive criminality or for other relevant reason'' does not limit his consideration of the conduct constituting such excessive criminality or other relevant reason to that occurring after placement. To the contrary, in most instances, a finding of excessive criminality, of necessity, would be predicated upon conduct prior to placement. ██ Reasonably interpreted, the statute confers upon the Director of Corrections the authority to exclude from the rehabilitation facility's program those persons detained therein for at least 60 days who he concludes, for the reasons stated in section 6453, are not fit subjects for confinement or treatment and, under generally accepted probative principles,[1] to base his conclusion upon conduct occurring before as well as after their placement, providing such conduct is reasonably related to their fitness at the time of exclusion. ██ The reasons for the superintendent's conclusion that appellant was not a fit subject for confinement or treatment at the rehabilitation center come within the purview of section 6453; are adequately supported by the facts; and comport with the obvious purpose sought to be obtained. He made no objection before the trial court to the order discharging him from the facility and returning him for further proceedings. No legal cause for such an objection existed. (Cf. *In re McLain,* 55 Cal.2d 78, 87 [9 Cal.Rptr. 824, 357 P.2d 1080].)

The judgment is affirmed.

Brown (Gerald), P. J., and Whelan, J., concurred.

---

[1]Generally see *Estate of Pierce,* 32 Cal.2d 265, 273-274 [196 P.2d 1]; *People* v. *Bolton,* 215 Cal.12, 20 [8 P.2d 116]; *Donnelly* v. *Rees,* 141 Cal. 56, 59, 63 [74 P. 433].)