[Crim. No. 8793. Third Dist. June 12, 1979.]

THE PEOPLE, Plaintiff and Respondent, v.
GLEN FORREST GEPHART et al., Defendants and Appellants.

COUNSEL

Michael E. Kilpatrick, under appointment by the Court of Appeal, for Defendants and Appellants.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Willard F. Jones and Edmund D. McMurray, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

REYNOSO, J.—A jury found defendants Gephart, Grossen and Hryn guilty of the crime of armed robbery in violation of Penal Code section 211.

Defendants assert that the Siskiyou County Superior Court erred when it determined that a prior order of another court, the Stanislaus County Superior Court, granting a motion under Penal Code section 1538.5 suppressing evidence, was not binding as to the same evidence as it relates to different charges filed in Siskiyou County. Consequently, they

argue that the court erred in failing to suppress the evidence in the Siskiyou County proceeding.

The salutary legislative purpose of section 1538.5, which we detail below, does not require its application to subsequent prosecutions on different charges. Public policy favors full litigation of issues. **(1, 2, 3)** **(See fn. 1.)** Accordingly, we hold that the Siskiyou court was not bound by the prior determination.[1]

## 1. *Procedural Setting*

The defendants were originally arrested[2] in the City of Turlock, Stanislaus County. A preliminary hearing was held before the justice court, Turlock Judicial District. After the preliminary hearing, the magistrate suppressed certain evidence but held the defendants to answer for a violation of Penal Code section 496, subdivision 1 (receiving stolen property). Defendant Hryn was also held to answer for the violation of Health and Safety Code section 11350. On December 4, 1975, a hearing was held in the Stanislaus County Superior Court. The judge granted the

---

[1]Defendants also assert that: (1) Regardless of the binding effect of the successful motion to suppress evidence in Stanislaus County, the Siskiyou County Superior Court erred in failing to suppress the evidence subject to the motion; (2) They were denied their right to a speedy trial; (3) Certain extrajudicial statements were improperly admitted; (4) The evidence was insufficient to support the verdicts; and (5) The trial court erred in failing to dismiss the charges under Penal Code section 995.

As to each of these contentions, we conclude: (1) The only evidence subject to the motion to suppress which was introduced at trial was a pistol seized from defendant Hryn. The pistol was seized during a proper pat-down search pursuant to a lawful investigative stop; it was thus properly admitted. (2) Each of the defendants expressly waived his right to a speedy trial, and thereafter failed to object to the date set for trial. The right to a speedy trial may be waived and defendants did so in this case. (*People* v. *Wilson* (1963) 60 Cal.2d 139, 146 [32 Cal.Rptr. 44, 383 P.2d 452].) (3) Objection to the challenged statements was waived by the failure to object, and further, any error in the admission of such statements was cured when the speaker subsequently testified at trial. (*People* v. *Steger* (1976) 16 Cal.3d 539, 551 [128 Cal.Rptr. 161, 546 P.2d 665, 83 A.L.R.3d 1206]; *People* v. *McGautha* (1969) 70 Cal.2d 770, 784-785 [76 Cal.Rptr. 434, 452 P.2d 650].) (4) A witness who identified defendant Hryn was not very sure of herself; however, weak testimony can be and was impeached. Positive identification is not required in order to sustain a conviction on appeal, and the combined evidence is sufficient to support the verdict. (*People* v. *Jackson* (1960) 183 Cal.App.2d 562, 568 [6 Cal.Rptr. 884].) (5) The facts necessary to justify holding a person to answer criminal charges need not be enough to support a conviction against that person. (*People* v. *Mardian* (1975) 47 Cal.App.3d 16, 38 [121 Cal.Rptr. 269].) We find sufficient evidence to support the denial of the motion to dismiss under Penal Code section 995.

[2]The record does not contain the Stanislaus criminal complaint; thus we are unaware of the precise charges, except as they may be revealed in the order holding defendants to answer.

motion under Penal Code section 1538.5 as to all of the evidence seized, and thereafter dismissed the action pursuant to Penal Code section 995.

The defendants were subsequently accused of a robbery committed in Siskiyou County. After preliminary hearings, Gephart, Grossen and Hryn were held to answer for a violation of Penal Code section 211 (armed robbery). The robbery in Siskiyou County was separate and distinct from the charges which had been dismissed in Stanislaus County. In the Siskiyou proceedings, defendants filed motions under Penal Code sections 1538.5 and 995. The preliminary hearing transcript and the transcript of the 1538.5 hearing in Stanislaus County were exhibits at the Siskiyou hearing. The parties stipulated to their admission. The Siskiyou Superior Court then ruled that the determination in the Stanislaus proceedings on the motion under Penal Code section 1538.5 had no effect on the Siskiyou proceedings. The court granted the motion under Penal Code section 1538.5 as to evidence which was seized from defendants' vehicle, but denied the motion as to other evidence. Defendants' motion under Penal Code section 995 and their nonstatutory motion to suppress a statement were denied.

In the jury trial which took place in May 1976, defendants Gephart, Grossen and Hryn were found guilty of the crime of armed robbery in violation of Penal Code section 211.

2. *The Evidence*

Helen Martin and Barbara Hunt were employed in Fort Jones, California, at the Fort Club. At approximately 12:30 a.m. on October 6, 1975, as they were closing the club, a man knocked at the door and asked whether he could purchase some cigarettes. The man left, then returned to buy more cigarettes. When allowed in, he pulled out a gun, pulling the clip back as he entered. A smaller man entered with him wearing a ski mask, and also carrying a gun. Upon being told that there was no safe, the men took $30 from Martin and $10 from Hunt and left.

Shortly after the robbery, Martin identified a picture from a photographic lineup as the man who did not wear a mask. A sergeant in the Siskiyou County Sheriff's office testified that the photograph identified by Martin was a photograph of Hryn. At trial Martin identified Hryn as the man in the robbery who did not wear a mask. On cross-examination, she stated that Hryn looked very familiar, but that she could not positively identify him. The description given the police by Martin after the robbery

was of a man 5 feet 11 inches tall, 185 pounds, blonde hair, and wearing a long-sleeved plaid shirt. The parties stipulated that when booked into the Stanislaus County jail, defendant Hryn's height was 5 feet 10 inches, his weight 160 pounds.

Louis Arndt, of the Siskiyou County sheriff's office, testified that on October 9, 1975, after waiving his rights under *Miranda,* defendant Grossen indicated that he had a feeling that he was involved in the robbery. On December 5, 1975, after a further *Miranda* waiver, Grossen indicated that he may have been in the bar during the robbery. Arndt further testified that Larry Lewis, a fellow prisoner in the Stanislaus County jail, stated that he overheard Gephart and Grossen discussing the matter and that they indicated that Grossen was in the bar, and Gephart was in the car. Larry Lewis had previously denied that he so advised Arndt.

James Puthoff, a Turlock police officer who was present at the defendants' arrest, testified that Hryn was wearing a red and black checkered shirt and levis upon arrest. A gun, which operates by pulling the clip back, seized from Hryn upon arrest, was admitted as evidence.

Detective Sergeant John Johnson of the Turlock Police Department interviewed Gephart and, after a *Miranda* waiver, was told by Gephart that he and Grossen picked up hitchhikers Hryn and Disney near the California-Oregon border. All of them had proceeded to Redding where they stayed overnight and then went on to Berkeley and finally to Turlock.

For the defense Ms. Town testified that she gave defendants Gephart and Grossen a ride to Yreka on October 3, 1975, because they were going by bus to Medford, Oregon. Ms. Gephart, defendant Gephart's mother, testified that Gephart and Grossen left for Medford on October 3, 1975, and returned that evening with a car. They left and she did not see them again until after they were arrested.

Defendant Gephart testified. On October 3, 1975, he went to Medford with Grossen and bought a car. On the way back, they picked up two hitchhikers, Hryn and Disney. They returned to his parents' home in Orofino, where he picked up some clothing and left. Gephart and Grossen picked up Hryn and Disney anew in a bar where they had left them and then drove to Redding. From Redding they drove to Berkeley. They began using drugs heavily, and drove from Berkeley to Hayward

and back. On October 6, 1975, they drove to Turlock. He denied the conversation alleged to have been overheard by Larry Lewis.

Defendant Grossen also testified. His testimony was similar to Gephart's on the route they took to Turlock and their usage of drugs. He also denied the conversation alleged to have been overheard by Larry Lewis. He denied being at the Fort Club. He further denied that he made admissions to Arndt.

Similarly, defendant Hryn testified. He agreed with his fellow defendants on the route taken and the usage of drugs. He further testified that he did not have the gun when picked up by Gephart and Grossen, and that he could not recall where or when he got the gun. He also denied being in the Fort Club.

The defense introduced testimony from Doctors O'Neill and Gasman on diminished capacity. Dr. O'Neill testified that the heavy use of drugs by defendants caused some brain damage, but that they were capable of forming the specific intent necessary to commit a robbery. Dr. Gasman found no brain damage in defendant Gephart, and believed he could form a specific intent, although his capacity would be affected. He also found that Grossen could form a specific intent but that his capacity would be diminished. And he found that defendant Hryn's capacity would be diminished.

Defendants' principal challenge to their conviction lies in the argument that evidence, once suppressed, should stay suppressed. That is, the ruling of a superior court on the admissibility of evidence in a Penal Code section 1538.5 motion acts either as res judicata or as collateral estoppel. In reaching our conclusion that the argument fails, we review the nature and purpose of Penal Code section 1538.5 as well as the doctrines of res judicata and collateral estoppel.

3.   *The Statutory Setting*

A brief review of statutory procedure will place section 1538.5 in perspective. Under the statutory scheme of Penal Code sections 995, 999a, and 1538.5, an accused may have up to seven opportunities to challenge the validity of a temporary detention, arrest, or search and seizure: (1) The accused can move to suppress the evidence obtained at the preliminary hearing (Pen. Code, § 1538.5, subd. (f)); (2) If the motion is denied and the accused is held to answer, a motion may be made in the

superior court to set aside the information for lack of probable cause on the ground that the evidence is the product of an illegal search (Pen. Code, § 995); (3) Upon the denial of a motion under Penal Code section 995, a defendant may file a petition for a writ of prohibition to stay the trial on the ground that the evidence is the product of an illegal search (Pen. Code, § 999a); (4) A special hearing de novo in the superior court on the validity of the search is proper (Pen. Code, § 1538.5, subd. (i)); (5) An adverse determination may be reviewed by means of a petition for a writ of prohibition or mandate in the appellate court (Pen. Code, § 1538.5, subd. (i)); (6) If prior to trial the opportunity for a section 1538.5 motion did not exist or the accused was not aware of the grounds for the motion, the issue may be raised at trial. (Pen. Code, §§ 1538.5, subds. (h) and (m); and (7) Finally, the matter may be considered on appeal after the denial of the motion under Penal Code section 1538.5, even though the accused enters a plea of guilty after the denial (Pen. Code, § 1538.5, subd. (m)).

The People, too, have several opportunities to challenge an adverse ruling. If a motion to suppress evidence is granted in a special proceeding authorized by Penal Code section 1538.5 the People can raise the matter again at trial if there is additional evidence and the People can show good cause why the additional evidence was not introduced at the hearing. (Pen. Code, § 1538.5, subd. (j).) The People may alternatively seek review of the decision in the special proceeding by filing a petition for a writ of mandate. (Pen. Code, § 1538.5, subd. (j).) A court, when ruling on a motion in a special proceeding under Penal Code section 1538.5, may dismiss the action on its own motion pursuant to Penal Code section 1538.5. (Pen. Code, § 1538.5, subd. (*l*).) However, the People can then appeal that determination, including the legality of the search. (Pen. Code, § 1238, subds. (a)(7), (c).)[3]

---

[3]The dismissal of an action under Penal Code section 995 after the granting of motion under Penal Code section 1538.5 is technically improper. The determination under Penal Code section 1538.5 is only reviewable by petition for a writ of mandate, but that will not avail if the action is dismissed. If the determination under Penal Code section 995 is appealed, the search issue is not reviewable as it can only be reviewed on appeal from a dismissal under Penal Code section 1385. (Pen. Code, § 1238, subd. (a)(7); see *People* v. *Superior Court (MacLachlin)* (1969) 271 Cal.App.2d 338, 344-346 [76 Cal.Rptr. 712]; *People* v. *Superior Court (Kusano)* (1969) 276 Cal.App.2d 581, 586 [81 Cal.Rptr. 42].) The problem has been resolved by the appellate courts, however, by treating the dismissal as one under Penal Code section 1385 as well as Penal Code section 995. (*People* v. *Minervini* (1971) 20 Cal.App.3d 832, 836 [98 Cal.Rptr. 107].) The matter is not a problem in this case, because the People failed to appeal the Stanislaus proceeding, and thus the issue became final by failure to appeal.

After making a determination in a special proceeding authorized by Penal Code section 1538.5, the superior court loses jurisdiction of the issue under Penal Code section 1538.5, and may not reopen or reconsider the matter prior to trial. (*Madril* v. *Superior Court* (1975) 15 Cal.3d 73, 77-78 [123 Cal.Rptr. 465, 539 P.2d 33].)

4. *Inapplicability of Res Judicata and Collateral Estoppel*

Defendants call our attention to Penal Code section 1538.5, subdivision (d) which provides: "If a search or seizure motion is granted pursuant to the proceedings authorized by this section, the property or evidence shall not be admissible against the movant at any trial or other hearing unless further proceedings authorized by this section or Section 1238 or Section 1466 are utilized by the people." This section and the doctrines of res judicata and collateral estoppel which we have mentioned, require the conclusion, defendants argue, that the Siskiyou County Superior Court was bound by the determination of the Stanislaus County Superior Court in the proceeding under Penal Code section 1538.5 in Stanislaus County. The evidence was the same, even if the charges were different.

We consider and reject the applicability of res judicata and collateral estoppel. ■ The doctrine of res judicata gives conclusive effect to a former judgment in subsequent litigation involving the same controversy. (4 Witkin, Cal. Procedure (2d ed. 1971) p. 3292.) That is, a prior judgment is a bar in a new action on the same cause of action. In a new action on a different cause of action, the former judgment may also have an effect. ■ By the doctrine of collateral estoppel, related to res judicata, issues actually litigated in the former action are conclusive. (*Id.*, at p. 3293.) The doctrine is based upon the sound public policy of limiting litigation by preventing a party who has had one fair trial on an issue from again drawing it into controversy. (*Bernhard* v. *Bank of America* (1942) 19 Cal.2d 807, 811 [122 P.2d 892].) ■ The purposes of res judicata, like collateral estoppel, are to promote judicial economy by minimizing repetitive litigation, to prevent inconsistent judgments which undermine the integrity of the judicial system, and to provide repose by preventing a person from being harassed by vexatious litigation. (*People* v. *Taylor* (1974) 12 Cal.3d 686, 695 [117 Cal.Rptr. 70, 527 P.2d 622].) In deciding whether the doctrine is applicable in a particular situation, a court must balance the need to limit litigation against the right of a fair adversary proceeding in which a party must fully present his case. (*Ibid.*)[4]

---

[4]Several cases illustrate the balance. *In re Crow* (1971) 4 Cal.3d 613 [94 Cal.Rptr. 254, 483 P.2d 1206] held that where the Sacramento Superior Court had issued a writ of

■ Res judicata and collateral estoppel are applicable in criminal proceedings independent of the concept of double jeopardy. (*People v. Beltran* (1949) 94 Cal.App.2d 197, 202 [210 P.2d 238].) ■ A defendant is not placed in jeopardy prior to the time a trial commences when the jury is sworn. (*Jackson v. Superior Court* (1937) 10 Cal.2d 350, 356 [74 P.2d 243, 113 A.L.R. 1422].) The proceedings in Stanislaus County were terminated prior to the time the jury was selected, and thus the concept of double jeopardy is not applicable.

A history of Penal Code section 1538.5 gives substance to our conclusion that res judicata and collateral estoppel do not apply. Prior to the adoption of Penal Code section 1538.5 in 1967, a determination in a proceeding prior to trial on the legality of a search and seizure was held not to be res judicata on subsequent prosecution on the same charge. (*People v. Joseph* (1957) 153 Cal.App.2d 548, 551-552 [314 P.2d 1004].) Further, a determination in a municipal court on a misdemeanor charge that evidence was the product of an illegal search was not binding on the People in a subsequent trial in a superior court on a felony charge. (*People v. Dykes* (1966) 243 Cal.App.2d 572, 576-577 [52 Cal.Rptr. 537].) However, a finding of the denial of counsel made under a motion to dismiss pursuant to Penal Code section 995 was held to be res judicata in later proceedings. (*People v. Mora* (1953) 120 Cal.App.2d 896, 899 [293 P.2d 522].) This holding was expressly disapproved in *People v. Van Eyk* (1961) 56 Cal.2d 471, 477 [15 Cal.Rptr. 150, 364 P.2d 326]; there the court held that res judicata does not apply in the proceedings prior to trial.[5]

habeas corpus finding that the petitioner was illegally held (due to the denial of a speedy trial) and the People, after contesting the order failed to appeal, the matter was res judicata against the People in a subsequent proceeding in Los Angeles where the superior court attempted to set aside the Sacramento order. *In re Russell* (1974) 12 Cal.3d 229 [115 Cal.Rptr. 511, 524 P.2d 1295], involved a writ of habeas corpus granted in Orange County. The Supreme Court held that the writ was not res judicata in a subsequent proceeding on the same issue in Los Angeles County. The distinction was that the proceeding was one in extradition, which is even more a preliminary matter than a preliminary hearing where res judicata does not apply to findings. Extradition does not involve the question of guilt at all, but involves a constitutional right of the requesting state for extradition. *Woodford v. Municipal Court* (1974) 37 Cal.App.3d 874 [112 Cal.Rptr. 773], held that where the People prosecute a seller of books for obscenity, and the book is determined not to be obscene, the matter is not res judicata as to other sellers of the book, and the state may relitigate the issue of obscenity in further criminal prosecutions. (See also *Greenfield v. Mather* (1948) 32 Cal.2d 23 [194 P.2d 1]; *Jackson v. Jackson* (1967) 253 Cal.App.2d 1026 [62 Cal.Rptr. 121], for the discretionary application of res judicata.)

[5]The trial judge relied upon *People v. Van Eyk, supra,* 56 Cal.2d 471, in ruling that he was not bound by the prior proceeding in Stanislaus County. *Van Eyk* dealt with a determination in a motion under Penal Code section 995, and not with the determination

Prior to the 1967 adoption of Penal Code section 1538.5, search and seizure issues in a felony case were raised by objection at the preliminary hearing in a motion under Penal Code section 995, and by objection to the introduction of evidence at trial. This procedure was much criticized. It did not give adequate opportunity for study and briefing of the legal issues, deprived the prosecution of appellate review, disrupted trials by collateral testimony and argument outside the presence of the jury, and delayed decision on the crucial matter of what evidence the defendant would be required to face until late in the proceedings, thus making plea bargaining difficult. (Krause, California Search and Seizure Practice (Cont.Ed.Bar 1975) § 2.1.) One of the major concerns of the Legislature in enacting Penal Code section 1538.5 was that the determination of the legality of the search was often made after jeopardy had attached. The prosecution could not appeal and the guilty could go free without recourse by the People. (See 22 Assem. Interim Com. Rep. (1965-1967) No. 12, Crim. Procedure.) The Assembly Interim Committee recommended the adoption of a law which would allow the determination to be made before trial and would allow the prosecution to appeal the determination. (*Ibid.*) Section 1538.5 accomplished that.

We do not believe that the Legislature intended to give the determination conclusive effect beyond the proceedings in which the defendant is involved at the time of the determination. The purposes of Penal Code section 1538.5 would be fully served without such effect in subsequent prosecutions on different charges. We are persuaded, therefore, that the determination in a special proceeding under Penal Code section 1538.5 is not binding on the prosecutor of a different county on different charges.

Sound policy reasons support this determination. The public prosecutor is vested with discretion in deciding whether to prosecute. (Gov. Code, § 26501.) This discretion is broad and quasi-judicial in nature. (*People* v. *Adams* (1974) 43 Cal.App.3d 697, 707 [117 Cal.Rptr. 905]; *People* v. *Municipal Court* (1972) 27 Cal.App.3d 193, 207 [103 Cal.Rptr. 645, 66 A.L.R.3d 717].) The discretion exercised is broader than "probable cause" and includes the opinion of guilt, likelihood of conviction, evaluation of legal issues, witness problems, whether the

in a special proceeding under Penal Code section 1538.5. The determination of legality of the search in the motion under Penal Code section 995 is a preliminary determination on the motion to dismiss, while the determination in a motion under Penal Code section 1538.5 is the only issue involved in the special proceedings. The issue in this case is thus distinguishable from that in *Van Eyk.*

accused is regarded as dangerous, and the alternatives to prosecution. (See Knapp, Prosecutorial Discretion (Cont.Ed.Bar 1975) Cal. Crim. Law Practice Series, §§ 1-16.) The determination on a motion under Penal Code section 1538.5 is a preliminary evidentiary determination and is independent of the real question in the proceedings, that of the accused's guilt. (*People* v. *Gale* (1973) 9 Cal.3d 788, 793 [108 Cal.Rptr. 852, 511 P.2d 1204].)

After the granting of a motion under Penal Code section 1538.5, the prosecutor may decline to proceed further for reasons quite independent of the legality of the search and seizure. To give binding effect to the order under Penal Code section 1538.5 could prevent prosecution in a different county on unrelated charges where entirely different policy reasons may exist for pursuing prosecution. The effect of the contention urged by defendants would be to prevent full and fair litigation of the issue by the prosecutor in Siskiyou County in a proceeding on charges distinct from the charges against the defendants in Stanislaus County. Such an effect would defeat one of the major purposes of the enactment of Penal Code section 1538.5, that of providing the prosecution with full appellate rights on the issues of the legality of the search and seizure.

We do not share the defendants' fear that our holding will result in forum shopping by the prosecution, litigating the same issue in court after court until a favorable ruling is obtained. The courts have inherent power to prevent the abuse of concern to the defendants. (*People* v. *Belknap* (1974) 41 Cal.App.3d 1019 [116 Cal.Rptr. 664].)

We hold that the Siskiyou County Superior Court was not bound by the prior determination in the Stanislaus County Superior Court in a special proceeding under Penal Code section 1538.5.[6]

The judgments are affirmed.

Puglia, P. J., and Regan, J., concurred.

A petition for a rehearing was denied July 9, 1979.

---

[6]This holding is not in conflict with *Madril* v. *Superior Court, supra,* 15 Cal.3d 73. There the superior court attempted to reopen and reconsider its ruling on a motion under Penal Code section 1538.5 in the same proceeding in which the motion had been made. Penal Code section 1538.5 provides the form of review the People may have in the same proceeding, and does not include reconsideration by the trial court prior to trial. This case involves a separate and distinct motion made in a separate and distinct criminal proceeding and the Siskiyou County Superior Court herein was not reopening or reconsidering the ruling in the Stanislaus County proceeding.