Opinion
BROWN (R. J.), J.*
Defendants were found guilty after a trial by the court of maintaining, conducting and managing a steam bath business without first obtaining a permit from the board of police commissioners, all in violation of section 103.205 of the City of Los Angeles Municipal Code.
The trial followed an order denying defendants’ motion under section 1538.5 of the Penal Code to suppress the observations of the officers obtained in a warrantless search of premises known as the Corral Club. The defendants appeal from the judgment of conviction, the order denying the motion to suppress and the order granting probation.
Defendants are the officers and directors of Saubring Corporation. The corporation’s only business appears to be the operation of an establishment known as the Corral Club. The evidence reveals that the facilities of the club include a steam bath. Such evidence is in the form of testimony of the observations of one of the three police officers who entered and walked through the club premises. The initial question presented by this appeal is whether the trial court erred in denying the defendants’ motion to suppress the officer’s testimony as to his More precisely, did the manner of entry and inspection of the premises of the Corral Club by the police violate constitutional ' standards?
*Supp. 4 It was stipulated in the hearing of the motion to suppress that the officers, at the time of their entry, were not armed with either a search warrant obtained as provided in section 1523 et seq. of the Penal Code or an inspection warrant issued under the provisions of sections 1822.50 to 1822.57 of the Code of Civil Procedure.
The city attorney contends, and the trial court found, that the officers’ entry of the Corral Club and the inspection which followed were with the consent of the attendant at the ticket window who was then on duty. The defendants, on the other hand, vigorously contend that such consent was never in fact given and that the attendant’s act in opening the club’s door can only be construed as a submission to police authority by one who considered opposition as futile.
Even though viewed in the light most favorable to the People, we believe the evidence is insufficient to sustain the order denying the motion to suppress and that reversal of that order and the judgment of conviction is required.
On February 18, 1974, Officers Noonkester, Searle and Moriarity, members of the vice squad of the Los Angeles Police Department, in plain clothes, visited the premises of the Corral Club “to check general vice conditions and police commission permits.” Only Officer Noonkester testified for the prosecution concerning the manner in which admittance to the premises was gained. He stated that the club is located in a two-stoiy building at 3749 Cahuenga Boulevard in Los Angeles and that a stairway leads to the entrance door which is locked and is near a window where tickets may be purchased for a price of $5 each. He testified that he asked the attendant how much it cost to get inside and was told $5. Then he asked, “I can just come up and buy a ticket?” [Apparently the attendant did not directly answer this question.] He identified himself as a police officer and asked to go inside to check the permits. The attendant started reading a prepared statement that was kept inside the ticket booth in case the police came. Officer Noonkester told the attendant that he had the right to go in to check the permit. While he was standing at the ticket booth and the attendant was reading the form to him out loud, he was told it was a private club and that he could not enter. The officer did not wait for him to complete the reading of the statement; he told the attendant he was a policeman and requested entrance. He gained entrance when the attendant finally came back and opened the door. While the officer was standing at the ticket booth, his partners were there also and they too identified themselves.
*Supp. 5 In our opinion, Officer Noonkester’s testimony establishes as a matter of law that if the attendant opened the door to admit him, it was because of the officers’ insistence that he had the right to inspect the interior and not. by reason of voluntary consent of the attendant.
The management’s instructions in such situations required that he not permit entry by the police, a fact of which the officers were made aware, and they knew that any purported consent of the attendant to their entry would be in contravention of such instructions.
Any doubt of the factual support of the above conclusion is dispelled by a perusal of. Exhibit I in evidence. It consists of a police report concerning a visit to the club premises by .Officers Noonkester, Searle, Moriarity and one other, through the same door, just five days before the entry involved in this case. On that occasion the officers’ demand that they be admitted was refused, whereupon (in the language of the officers) they “liberated the door from its hinges,” then entered and arrested certain occupants found inside. If that occurrence was to the club’s staff at all, it conveyed to them the clear message that the officers would not accept and peacefully depart if admittance were denied them.
Since the search was made without a warrant, the burden was on the prosecution to show proper justification. As in People v. Shelton (1964) 60 Cal.2d 740, 744 [36 Cal.Rptr. 433, 388 P.2d 665], we conclude that “[t]he prosecution not only failed to sustain that burden, but established by the testimony of the arresting officer[s] [himself] that there was no justification.” The evidence was therefore illegally obtained and should be excluded if the propriety of the entry and search rests solely on the theory that it was consensual.
“ ‘Whether in a particular case an apparent consent was in fact voluntarily given or was in submission to an express or implied assertion of authority, is a question of fact to be determined in the light of all the circumstances.’ ” (People v. Shelton, supra, 60 Cal.2d at p. 746.) And the trial court’s factual determination that consent was voluntarily given is not to be set aside if there is any substantial evidence to support it. (People v. Lawler (1973) 9 Cal.3d 156 [107 Cal.Rptr. 13, 507 P.2d 621].) However, where it appears from the officer’s own testimony that he ordered the door opened when he had no right to do so and the circumstances clearly indicate that the attendant complied with the order because he believed resistance would be futile, the question becomes one *Supp. 6 of law, and the lower court’s determination that admittance was freely and voluntarily given cannot stand. (People v. Shelton, supra; Bumper v. North Carolina (1968) 391 U.S. 543 [20 L.Ed.2d 797, 88 S.Ct. 1788].)
The court in Bumper v. North Carolina, supra, 391 U.S. at page 550 [20 L.Ed.2d at p. 803], though dealing with facts somewhat at variance with this case, expressed the principle that guides us here: “When a law enforcement officer claims authority to search a home under a warrant, he announces in effect that the occupant has no right to resist the search. The situation is instinct with coercion—albeit colorably lawful coercion. Where there is coercion there cannot be consent.” Our analysis of the cases leads us to conclude that where the officer does not possess the authority he asserts, i.e., the right to enter and search, the consent of the occupant allowing him to do so, if induced by such assertion, is not free and voluntary. Whether the officer is unwittingly mistaken or deceptive is irrelevant. If the officer is correct as well as truthful in what he asserts as his reason for seeking entry, a finding of voluntary consent has been upheld even though his reason is not one which permits a warrantless entry.[1] In the case before us, Officer Noonkester based his demand that he be allowed entry into the premises upon his insistent claim that he, as a police officer, had the right to enter and inspect them. In fact he had no such right in the absence of a warrant, hence, the attendant’s purported consent did not possess the free and voluntary character required for a valid consensual entry.
Implicit in Officer Noonkester’s assertion of his right to enter and inspect the interior of the premises without a warrant and without the consent of the occupants is his contention that any commercial which is accessible to the public is subject to such a search by officers investigating whether illegal activities are carried on therein. In view of our determination that the manager’s cooperation in the entry and search was coerced and ineffectual as a consent, we must next consider the officer’s claim that neither a warrant nor the occupants’ consent was necessary.
*Supp. 7 The testimony of Officer Noonkester can hardly be viewed as establishing that the privilege of entering and using the club’s facilities was extended to any and everyone who might tender payment of the admission fee. Such an inference is not to be drawn from the mere fact that the attendant at the ticket window may have told him that the price to get inside was $5 or that the attendant did not respond to the officer’s query, “I can just come up and buy a ticket?” before the officer flashed his badge and began insisting upon his right, as a police officer, to enter and inspect. We think it is clear from the testimony of the defendants’ witness and is unrefuted by any evidence offered by the prosecution that outwardly, at least, the facility had the appearance of a private social club which was accessible only to those who were members or guests of members or were in some manner connected with operations within the premises.
Whether the Corral Club should be classified as a private club or a commercial enterprise is of little moment where the ultimate question is whether the officer had the right to make a warrantless entry of the facility in which the club conducted its activities. If the area involved “was one in which there was a reasonable expectation of freedom from governmental intrusion,” it was constitutionally protected from a search. (Mancusi v. DeForte (1968) 392 U.S. 364, 368 [20 L.Ed.2d 1154, 1159, 88 S.Ct. 2120].) Katz v. United States (1967) 389 U.S. 347, 351 [19 L.Ed.2d 576, 582, 88 S.Ct. 507] states “[T]he Fourth Amendment protects people, not places. What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection. [Citations omitted.] But what he seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected.”
The entry of the officers cannot be legitimized by characterizing it as an “inspection” to ascertain whether the occupant was maintaining or using the premises in some manner offensive to health, fire or building regulations. Such inspections are searches within the contemplation of the Fourth Amendment. (Camara v. Municipal Court (1967) 387 U.S. 523 [18 L.Ed.2d 930, 87 S.Ct. 1727].) The court in See v. City of Seattle (1967) 387 U.S. 541, 545 [18 L.Ed.2d 943, 947, 87 S.Ct. 1737] declared: “[Administrative entiy, without consent, upon the portions of commercial premises which are not open to the public may only be compelled through prosecution or physical force within the framework of a warrant procedure.” Sections 1822.50 through 1822.57 of the California Code of Civil Procedure provide the manner in which inspection warrants may *Supp. 8 be obtained and regulate the time and manner of their execution.[2] Evidence procured through illegal and warrantless inspection is subject, as a general rule, to the same exclusionary sanctions as other illegally obtained evidence. (Vidaurri v. Superior Court (1970) 13 Cal.App.3d 550 [91 Cal.Rptr. 704].)
In view of our conclusion on the search issue, the judgment must be reversed. We do not reach the defendants’ argument that, in view of the State’s preemption of the regulation of criminal aspects of sexual activity, the City of Los Angeles is without power to enact an ordinance requiring a permit from the board of police commissioners for the conduct of the business of giving steam baths.
The judgment is reversed and the orders denying defendants’ motion, to suppress and granting them probation are set aside.
Marshall, Acting P. J., and Alarcon, J., concurred.

Assigned by the Chairman of the Judicial Council.

E.g., People v. Linke (1968) 265 Cal.App.2d 297 [71 Cal.Rptr. 371], where the officers truthfully advised the defendant’s wife that they had a warrant for the defendant’s arrest and suspected that he was in the house. She gave her permission for a search of the premises, and although he was not found, marijuana was found. Evidence of the marijuana discovery was properly received in a prosecution for possession of a controlled substance.

An inspection warrant is defined in section 1822.50 of the Code of Civil Procedure as an order “signed by a judge of a court of record, directed to a state or local official, commanding him to conduct any inspection required or authorized by state or local law or regulation relating to building, fire, safety, plumbing, electrical, health, or zoning." It is provided in section 1822.51 of the Code of Civil Procedure that such a warrant “shall be issued only upon cause, supported by affidavit, particularly describing the place, dwelling, structure, premises, or vehicle to be searched and the purpose for which the search is made. In addition, the affidavit shall contain either a statement that consent to inspect has been sought and refused or facts or circumstances reasonably justifying the failure to seek such consent.” An inspection warrant is effective only for the period specified, but may be extended by the issuing judge where good cause exists. Unless otherwise expressly authorized by the provisions of the warrant, the inspection must be conducted only between 8 a.m. and 6 p.m., must be made in the presence of the owner or occupant and forcible entry is not permitted.