[Crim. No. 19324. First Dist., Div. Four. Mar. 5, 1980.]

THE PEOPLE, Plaintiff and Respondent, v.
ALAN JEROME SCHOENNAUER, Defendant and Appellant.

COUNSEL

George L. Schraer, under appointment by the Court of Appeal, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, Gloria F. DeHart and Laurence K. Sullivan, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

CALDECOTT, P. J.—Alan Jerome Schoennauer appeals from a judgment of conviction, following a plea of guilty, of violation of Penal Code section 496 (receiving stolen property). We affirm the judgment.

Appellant moved, pursuant to Penal Code section 1538.5, subdivision (f), at the preliminary hearing, to suppress evidence seized from an automobile and from his apartment. The motion was denied, and he was held to answer. Appellant filed a motion to set aside the information pursuant to Penal Code section 995, and filed a motion to suppress evidence pursuant to Penal Code section 1538.5, subdivision (i). Both motions were denied. Appellant withdrew his plea of not guilty and entered a plea of guilty of violation of Penal Code section 496 (receiving stolen property).

At approximately 5 p.m., on February 10, 1978, Mark Uribes left his apartment in Fremont. Upon his return at approximately 1 a.m., the following day, he found the kitchen window broken and his television set, eight-track stereo receiver, two stereo speakers and a clock-radio missing.

Around 11:30 p.m., on February 10, 1978, appellant went to David Jefferson's apartment and asked David to drive him to Union City. Both appellant and David Jefferson live in the same apartment building as Mark Uribes. As they were leaving, appellant asked Jefferson to drive to the other side of the parking lot where two of appellant's friends, Clifton Dordan and Thomas Gregory, were standing with a television set, stereo receiver and a clock-radio. The television set and stereo receiver were put in the back seat of Jefferson's car, while the clock-radio was placed in the trunk. Jefferson then drove the three men to Union City and stopped the car on Depot Street in Union City. One of appellant's friends left the car.

At approximately 11:40 p.m., the same evening, Union City Police Officers Grand and Stevens were driving a marked patrol car when they noticed Jefferson's car parked on Depot Street with the interior lights on. When the officers passed the car again, the interior lights were off and the officers could see some persons inside the car. The officers made a U-turn and parked behind the car. Because it was late at night and the car was parked in a residential area which had been plagued during the preceding two months with several burglaries involv-

ing television sets, the officers wanted to ascertain whether the occupants of the car were residents of Union City and why they were parked at that location. As Officer Grand approached Jefferson's car, he noticed an electrical cord hanging from the closed trunk. As he got closer, he observed appellant sitting next to a television set in the back seat of the car and two other individuals in the front seat. Officer Grand asked all three individuals for identification. Jefferson produced his California driver's license which indicated that he lived in Fremont. Dordan, the front seat passenger, produced an identification card which showed his address to be in Hayward. Appellant was without identification, but told Officer Grand his name and address. Although appellant stated that he lived at the same address as Jefferson, the address he gave to Officer Grand conflicted with the address on Jefferson's driver's license. Appellant told Officer Grand that they were intending to visit an individual by the name of Orsetti who lived in the home directly in front of the car. Officer Stevens went to the home and learned that the occupants were not named Orsetti nor did they know anyone by that name.

Because of the conflicting information, Officer Grand asked the occupants to exit the car separately so that he could interview each one individually. Officer Grand received the following conflicting statements. Jefferson and appellant stated that the television set belonged to Dordan whereas Dordan denied ownership. Jefferson and appellant stated that they had picked up Dordan at an apartment building in Fremont whereas Dordan said that he was picked up in Union City while hitchhiking.

Jefferson stated that he owned the car and granted consent to search. Officer Grand entered the car and found alongside the television set, an AMFC eight-track player which appeared to have been pulled from a wall. Officer Grand was given keys to the trunk and found inside a clock-radio. All three occupants were placed under arrest.

Two days later, on February 12, 1978, appellant's apartment was searched pursuant to a search warrant issued to Police Officer Mike McCullen. Officer McCullen found and seized inter alia two stereo speakers.

I

Appellant specifically stated in his notice of appeal that he is appealing from the whole of the judgment and that the "appeal is based on the

denial of Defendant's motion under section 1538.5 of the Penal Code, and is taken pursuant to section 1538.5(m) of the Penal Code and Rule 31 (d) of the California Rules of Court."[1] Appellant, however, challenges in his opening brief not only the propriety of the trial court's ruling on his section 1538.5 motion, but also the propriety of the denial of his section 995 motion.

Under the statutory scheme of sections 995 and 1538.5, appellant moved at the preliminary hearing to suppress the evidence pursuant to section 1538.5, subdivision (f). His motion was denied. He then moved in the superior court, pursuant to section 995, to set aside the information for lack of probable cause on the ground that the evidence is the product of an illegal search. Appellant simultaneously filed a motion in the superior court to suppress the evidence pursuant to section 1538.5, subdivision (i). After separate hearings, both motions were denied.

The procedures followed by the superior court in hearing a section 995 motion and a section 1538.5 motion vary. Section 995 requires the superior court to determine, after review of the preliminary examination transcript, whether there was any substantial evidence to support the magistrate's ruling. (*People v. Gephart* (1979) 93 Cal.App.3d 989, 995-996 [156 Cal.Rptr. 489]; *People v. Sanchez* (1972) 24 Cal.App.3d 664, 690-691 [101 Cal.Rptr. 193].) A section 1538.5 motion enables the accused to have a de novo hearing in the superior court and requires the court to independently weigh the evidence. (*People v. Gephart, supra*, 93 Cal.App.3d 989 at pp. 995-996; *People v. Sanchez, supra*, 24 Cal.App.3d 664 at pp. 690-691.)

Upon denial of one or both motions, the accused is entitled to appellate review under section 1538.5, subdivision (m). (*People v. Gephart, supra*, 93 Cal.App.3d 989 at p. 996; *People v. Lilienthal* (1978) 22 Cal.3d 891, 897 [150 Cal.Rptr. 910, 587 P.2d 706].) Appellate review is still available even where the accused enters a plea of guilty after the denial of either motion. (*People v. Lilienthal, supra*, 22 Cal.3d 891 at p. 897.)

■ It is challenged by the People that the disparate functions of the appellate court in reviewing the determination of both motions will lead to irreconcilable conflict. The People cite *People v. Sanchez, supra*, 24 Cal.App.3d 664, 690, footnote 15, in which the court states that

---

[1]All section references are to the Penal Code.

"...[i]n reviewing on appeal the denial of a motion under Penal Code, section 995, it is the determination of the magistrate at the preliminary hearing that is reviewed. [Citation omitted.] In reviewing on appeal the denial of a renewed motion to suppress pursuant to Penal Code, section 1538.5, subdivision (i) it is the de novo determination of the superior court that is reviewed." There, the court found that although the motion to suppress pursuant to section 1538.5, subdivision (i) was correctly determined by the superior court, the magistrate erroneously ruled on the original motion to suppress. (*Id.*, at pp. 690-692.) The judgment was not reversed because the error was raised for the first time on appeal. The court noted that: "...having determined that the search warrant was valid, were we to reverse for errors and irregularities occurring in the original motion to suppress or the preliminary hearing we would be in the absurd posture of reversing for new proceedings to determine a question upon which our present decision would constitute the law of the case." (*Id.*, at p. 691.)

The law offers an accused two pretrial avenues of challenging the admissibility of evidence allegedly obtained from an illegal search and seizure. Section 1538.5, subdivision (m) provides that proceedings pursuant to sections 995 and 1538.5, as well as sections 1238 and 1466, are to be considered the sole and exclusive remedies prior to conviction to test the unreasonableness of a search or seizure. There is no reference in section 1538.5, subdivision (m) or any other section of the Penal Code that the determination of one motion precludes the determination of the other motion. "[T]he motion to suppress provided for by [section 1538.5, subdivision (m)] is an alternative to and not necessarily in lieu of the older procedure under section 995." (*People v. Superior Court (Kusano)* (1969) 276 Cal.App.2d 581, 584 [81 Cal.Rptr. 42].)

If both motions may be presented during the trial court proceedings, then it necessarily follows that appellate review of the disposition of each motion is available. In *People v. Superior Court (Martin)* (1971) 20 Cal.App.3d 384 [97 Cal.Rptr. 646] and *People v. Superior Court, supra*, 276 Cal.App.2d 581, the People appealed from the superior court's order dismissing the information and sought a writ of mandate to vacate the order of suppression. Both appellate courts consolidated the appeal with the mandamus proceeding and considered both sections 995 and 1538.5 motions in one appeal. A defendant's appeal from the denial of his motion to suppress and to set aside the information were reviewed simultaneously by the court in *People v. Nickles* (1970) 9 Cal.App.3d 986 [88 Cal.Rptr. 763]. Accordingly, both motions, if prop-

erly brought in the trial court, may be reviewed simultaneously on appeal.

The People next contend that appellant is not entitled to raise as an issue the propriety of the determination of the section 995 motion since the notice of appeal specifically and only refers to the section 1538.5 motion. The People cite *People* v. *Huff* (1978) 83 Cal.App.3d 549, 560 [147 Cal.Rptr. 316], wherein the court held that since defendant's notice of appeal limits the issue to "'the denial of defendant's motion under section 1538.5 of the Penal Code, and is taken pursuant to section 1538.5(m) of the Penal Code, . . .'" the defendant may not raise on appeal the propriety of the trial court's ruling on his section 995 motion.

It is well established that it is appellant's opening brief which controls the nature and number of issues presented on appeal. (*Burns* v. *Ross* (1923) 190 Cal. 269 [212 P. 17].) And it is equally well established that an appellate court "'is undoubtedly at liberty to decide a case upon any points that its proper disposition may seem to require, whether taken by counsel or not.'" (*Id.*, at p. 276.) Appellant appealed from the entire judgment of conviction of which the denial of his section 995 motion is a part. In his opening brief, he raised the issue concerning the propriety of the disposition of his section 995 motion. He augmented the record on appeal to include the preliminary hearing transcript on which the section 995 motion is based. Appellant properly presented for appellate review the issue concerning the section 995 motion.

We proceed to pass upon the propriety of the trial court's ruling on both sections 995 and 1538.5 motions.

## II

Appellant contends that the evidence seized as a result of the search of Jefferson's car and appellant's apartment should have been suppressed in that the detention was illegal and in violation of appellant's Fourth Amendment rights.

Whether an individual has been detained has been the subject of considerable discourse. (See *Terry* v. *Ohio* (1968) 392 U.S. 1 [20 L.Ed.2d 889, 88 S.Ct. 1868]; *People* v. *Bower* (1979) 24 Cal.3d 638 [156 Cal.Rptr. 856, 597 P.2d 115]; *In re Tony C.* (1978) 21 Cal.3d 888 [148

Cal.Rptr. 366, 582 P.2d 957]; *People* v. *Superior Court (Backey)* (1978) 85 Cal.App.3d 1020 [149 Cal.Rptr. 349].) The question was confronted by the court in *In re Tony C., supra,* 21 Cal.3d 888, wherein detention was defined not in terms of physical restraint, fear or force, but in terms of the police officer's intent when questioning an individual. "If the individual is stopped or detained because the officer suspects he may be personally involved in some criminal activity, his Fourth Amendment rights are implicated and he is entitled to the safeguards of the rules set forth above." (*Id.,* at p. 895.) ■ The rules to which the court refers are the following: "[I]n order to justify an investigative stop or detention the circumstances known or apparent to the officer must include specific and articulable facts causing him to suspect that (1) some activity relating to crime has taken place or is occurring or about to occur, and (2) the person he intends to stop or detain is involved in that activity. Not only must he subjectively entertain such a suspicion, but it must be objectively reasonable for him to do so: the facts must be such as would cause any reasonable police officer in a like position, drawing when appropriate on his training and experience (*People* v. *Superior Court (Kiefer), supra,* 3 Cal.3d at p. 872), to suspect the same criminal activity and the same involvement by the person in question. The corollary to this rule, of course, is that an investigative stop or detention predicated on mere curiosity, rumor, or hunch is unlawful, even though the officer may be acting in complete good faith. (*Terry* v. *Ohio, supra,* 392 U.S. at p. 22....)" (*Id.,* at p. 893.)

■ Applying these rules to the facts of the present case, there is no question the police officers had a rational belief that a criminal act had taken place or would take place.

Officers Grand and Stevens were cruising an area wherein several burglaries had occurred over the past two-month period, approximately two to three burglaries a week primarily involving television sets. At 11:40 p.m., they noticed a car with the interior lights on parked in a sparsely populated residential area. When they passed the parked car again, the interior lights were off and the officers observed three individuals in the car. Since the car was parked late at night in front of a darkened home in a high crime area, the officers wanted to determine the residency of the occupants and the reason for their presence in the particular area. The officers parked behind Jefferson's car and approached the vehicle in order to question the occupants. As he neared the driver's side of the car, Officer Grand noticed an electrical cord hanging from the trunk of the car. He also observed three individuals in

the car including appellant who was sitting in the back seat next to a television set. Officer Grand then began questioning the occupants. It is at this point that the detention occurred. Within the meaning of *Terry v. Ohio, supra*, 392 U.S. 1, 16 [20 L.Ed.2d 889, 903], the detention of appellant and his companions began when the officers "restrain[ed] [their] freedom to walk away."

Thus, the question to address is whether the officers reasonably entertained a "good faith suspicion" (*People v. Harris* (1975) 15 Cal.3d 384, 388 [124 Cal.Rptr. 536, 540 P.2d 632]) "'that some activity out of the ordinary is taking place, and some *suggestion* that the activity is related to crime....'" (*People v. Gale* (1973) 9 Cal.3d 788, 798 [108 Cal.Rptr. 852, 511 P.2d 1204].) If the underlying facts reasonably "distinguish [the suspects] from any other citizen...at that time and place," the detention is justified. (*People v. Moore* (1968) 69 Cal.2d 674, 683 [72 Cal.Rptr. 800, 446 P.2d 800].)

Considering the lateness of the hour, the location of the vehicle, the change in the interior car lighting, the presence of an electrical cord protruding from the closed trunk and a television set in the back seat, we conclude the officers were justified in suspecting that some criminal activity had taken place or was about to take place.

We recognize that the factors of "nighttime" and "high crime area" taken alone are insufficient to suggest criminality (*People v. Bower, supra*, 24 Cal.3d 638 at p. 645) but together and in conjunction with the other elements observed by the police officers, they aid in suggesting some criminal activity and give rise to a reasonable suspicion.

### III

■ A well established and delineated exception to the principle that a search conducted without a warrant is per se unreasonable (*Katz v. United States* (1967) 389 U.S. 347, 357 [19 L.Ed.2d 576, 585, 88 S.Ct. 507]) is a search conducted pursuant to consent. (*Zap v. United States* (1946) 328 U.S. 624, 628 [90 L.Ed. 1477, 1481-1482, 66 S.Ct. 1277]; *People v. Michael* (1955) 45 Cal.2d 751, 753 [290 P.2d 852].) The consent must be freely and voluntarily given. (*Bumper v. North Carolina* (1968) 391 U.S. 543, 548 [20 L.Ed.2d 797, 802, 88 S.Ct. 1788].)

"Voluntariness is a question of fact to be determined from all the circumstances, and while the subject's knowledge of a right to refuse is a factor to be taken into account, the prosecution is not required to demonstrate such knowledge as a prerequisite to establishing a voluntary consent." (*Schneckloth* v. *Bustamonte* (1973) 412 U.S. 218, 248-249 [36 L.Ed.2d 854, 875, 93 S.Ct. 2041].)

Circumstances which give rise to an illegal search based upon purported consent center around coercive, intimidating conduct by the police. (*People* v. *Brown* (1975) 53 Cal.App.3d Supp. 1 [125 Cal.Rptr. 739]; *People* v. *McKelvy* (1972) 23 Cal.App.3d 1027 [100 Cal.Rptr. 661]; *Stern* v. *Superior Court* (1971) 18 Cal.App.3d 26 [95 Cal.Rptr. 541].) In *People* v. *McKelvy, supra,* 23 Cal.App.3d 1027, defendant was walking in a residential area at 3 a.m., when four police officers in a marked police car turned their spotlight on him. They then saw him put a dark object in his pocket. Thinking it was a Molotov cocktail, they stopped their vehicle and all four officers, armed with either a shotgun or carbine, approached defendant. (*Id.,* at p. 1032.) After the defendant explained that he was going home, one officer asked defendant to hand over the object he had placed in his pocket. The restricted drugs which were handed over to the police officers were found by the appellate court to be the product of an unlawful search for "defendant's compliance was in fact under compulsion of a direct command by the officer." (*Id.,* at p. 1034.) In *People* v. *Fields* (1979) 95 Cal.App.3d 972 [157 Cal.Rptr. 578], the court found that the person who had ostensible authority to permit a search did not voluntarily and freely give consent to search, but rather submitted to an implied assertion of police authority.

█ We have no such facts here which suggest a consent based on coercion, compulsion or assertion of police authority.

After the initial contact by Officer Grand, the occupants of the car were asked to exit the car separately and were interviewed individually. No display of force or authority was used during the questioning. There was no showing of weapons when the police asked Jefferson if they could search the car. Nor was there evidence the police officers suggested that to resist a search would be unwise or fruitless, or that a search was officially sanctioned. (*Parrish* v. *Civil Service Commission* (1967) 66 Cal.2d 260, 268-270 [57 Cal.Rptr. 623, 425 P.2d 223].) Both Officer Grand and Jefferson testified that the search was given pursuant to Jefferson's consent. Whether the police "asked to search" or

"asked permission to search" as distinguished by *People* v. *James* (1977) 19 Cal.3d 99 [137 Cal.Rptr. 447, 561 P.2d 1135], and *People* v. *Fields, supra*, 95 Cal.App.3d 972, is not known. Nevertheless, the evidence demonstrates that Jefferson's consent to search the interior and trunk of his car was the product of his free will.

Accordingly, appellant may not succeed in his argument that the search of Jefferson's car was illegal thereby requiring suppression of the evidence seized during that search.

### IV

■ Appellant contends that evidence seized in the search of his apartment must be suppressed because the search warrant failed to show that Jefferson was a reliable citizen informant. It is not necessary for us to reach this issue, however, because irrespective of Jefferson's statements the affidavit shows sufficient probable cause. ■ "[T]he warrant can be upset only if the affidavit fails as a matter of law to set forth sufficient competent evidence supportive of the magistrate's finding of probable cause, since it is the function of the trier of fact, not the reviewing court, to appraise and weigh evidence when presented by affidavit as well as when presented by oral testimony." (*Skelton* v. *Superior Court* (1969) 1 Cal.3d 144, 150 [81 Cal.Rptr. 613, 460 P.2d 485].)

■ The affidavit below was not based solely upon hearsay information supplied by Jefferson. The victim of the burglary, Uribes, supplied the affiant with a description of the items stolen from his apartment. The crime report reviewed by the affiant indicated that appellant was one of three people found in an automobile containing some of the same property reportedly stolen from Uribes. Appellant was known to live in the same apartment complex as Uribes. One of appellant's companions at the time of the arrest was a known associate of Gregory, whose fingerprints were found at the scene of the burglary. Some of the items reported missing, including two stereo speakers, were not found in the search of the car. These facts establish the probable cause necessary to justify issuance of the search warrant.

The case here is similar to the situation in *People* v. *Superior Court (Brown)* (1975) 49 Cal.App.3d 160 [122 Cal.Rptr. 459], in which the Court of Appeal upheld a search warrant issued for defendant's house. There, a burglary had been committed, certain items were missing from

the burglarized home and the defendant and another man were implicated in the burglary. The court found these facts sufficient to justify a search of the defendant's home even though the missing items had not been seen in the house nor had anyone been observed transporting the items there. The court explained: "'The situation here does not differ markedly from other cases wherein this court and others, albeit usually without discussion, have upheld searches although the nexus between the items to be seized and the place to be searched rested not on direct observation, as in the normal search-and-seizure case, but on the type of crime, the nature of the missing items, the extent of the suspect's opportunity for concealment, and normal inferences as to where a criminal would be likely to hide stolen property.'" (*People* v. *Superior Court* (*Brown*), *supra*, 49 Cal.App.3d 160 at p. 167, quoting *United States* v. *Lucarz* (9th Cir. 1970) 430 F.2d 1051, 1055.)

Accordingly, the questionable status of Jefferson as a citizen informant does not affect the validity of the warrant.

The judgment is affirmed.

Christian, J., and Poché, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied April 30, 1980.