Filed 11/4/15  Producer-Writers Guild of American Pension Plan v. Adell CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| PRODUCER-WRITERS GUILD OF AMERICA PENSION PLAN,<br><br>    Plaintiff and Respondent<br><br>v.<br><br>ILUNGA ADELL et al.,<br><br>    Defendants and Respondents;<br><br>TERRY WILLIAMS-ILUNGA,<br><br>    Defendant and Appellant. | B257309<br><br>(Los Angeles County<br>Super. Ct. No BD290216 |

APPEAL from a judgment of the Superior Court of Los Angeles County, B. Scott Silverman, Judge.  Affirmed.

Reich, Adell & Cvitan, Hirsch Adell, J. David Sackman and Neelam Chanda for Plaintiff and Respondent Producer-Writers Guild of America Pension Plan.

Ilunga Adell in pro. per. for Defendant and Respondent Ilunga Adell.

Charles J. Fleishman for Defendant and Appellant Terry Williams-Ilunga.

The question presented by this appeal is whether a family law court has jurisdiction to hear an interpleader filed by a pension plan involuntarily joined to dissolution proceedings, where the plan is governed by the federal Employee Retirement Income Security Act of 1974 ("ERISA"). We conclude that it does, at least under the unusual circumstances presented by this procedurally anomalous case. Although ERISA grants federal courts exclusive jurisdiction over most civil actions brought pursuant to its provisions (29 U.S.C. § 1132(e)(1)), the state law interpleader filed in this case was not an independent civil action instigated by the Plan but rather was an "appropriate responsive pleading" within the meaning of Family Code section 2063, subdivision (b). We accordingly affirm the judgment of the trial court.

## FACTUAL AND PROCEDURAL BACKGROUND

This appeal stems from the family court's attempt to resolve competing claims to pension benefits. Ilunga Adell ("Ilunga"),[1] his first wife, Rosalyn Willis Ilunga ("Rosalyn"), and his second wife, Terry Williams-Ilunga ("Terry"), all stake claim to retirement benefits Ilunga earned while participating in the Producer-Writers Guild of America Pension Plan ("the Plan"). Rosalyn was awarded one-half of the community interest in the retirement benefits in 2000, upon the dissolution of her marriage to Ilunga. Terry obtained an interest in the retirement benefits during her subsequent dissolution proceedings in 2002, when the court issued an order attaching Ilunga's pension benefits "as and for child support and support arrearage for the parties['] minor children." In 2011,Terry obtained a judgment against Ilunga for pendente lite child support arrearages totaling $114,592.69.

Rosalyn obtained an enforceable "qualified domestic relations order," or "QDRO," authorizing the Plan to pay her share of the retirement benefits in 2012.[2] Terry

---

[1] We refer to the parties by their first names to avoid confusion. No disrespect is intended.

[2] A domestic relations order (DRO) is "any judgment, decree, or order (including approval of a property settlement agreement) which—[¶] (I) relates to the provision of

2

tried to procure a QDRO effectuating payment of Ilunga's child support arrearages, but she and the Plan, which she had joined to her dissolution proceedings (see Fam. Code, § 2060), were unable to reach a consensus as to whether her proposed order could qualify as a QDRO.[3]  While Terry and the Plan were addressing that issue in Terry's dissolution proceedings, Ilunga applied for early retirement benefits, thereby asserting his own claim to the benefits.  Shortly thereafter, Rosalyn joined the Plan to *her* dissolution proceedings pursuant to Family Code section 2060.  At no point were Rosalyn, Terry, Ilunga, and the Plan all parties to either dissolution proceeding.  Although Ilunga and the Plan were parties to both proceedings, Rosalyn was absent from Terry's and Terry was absent from Rosalyn's.

---

child support, alimony payments, or marital property rights to a spouse, former spouse, child, or other dependent of a participant, and (II) is made pursuant to a State domestic relations law (including a community property law)."  (29 U.S.C. § 1056(d)(3)(B)(ii).)  A "'QDRO is a subset of "domestic relations orders" that recognizes the right of an alternate payee to "receive all or a portion of the benefits payable with respect to a participant under [a retirement benefits] plan."  29 U.S.C. § 1056(d)(3)(B)(i)(I).' [Citations.]"  (*In re Marriage of Padgett* (2009) 172 Cal.App.4th 830, 840.)  Absent a QDRO, the anti-alienation provisions of ERISA prohibit employee benefits plans from distributing benefits to individuals who, like Rosalyn and Terry, are not named plan participants or beneficiaries.  (See *Boggs v. Boggs* (1997) 520 U.S. 833, 846-847; *In re Marriage of Padgett*, *supra*, 172 Cal.App.4th at p.839.)

[3] "Primary responsibility for determining whether a DRO is a QDRO that establishes obligations for an ERISA plan rests with the plan itself. 29 U.S.C. § 1056(d)(3)(G).  Upon obtaining a domestic relations order in a state court proceeding, an alternate payee who seeks to establish a right to payment pursuant to that order from an ERISA-covered benefit plan must present the order to the pension plan administrator for a determination of whether it is a QDRO. . . .  [¶]  Under this scheme, then, whether an alternate payee has an interest in a participant's pension plan is a matter decided by a state court according to the state's domestic relations law.  Whether a state court's order meets the statutory requirements to be a QDRO, and therefore is enforceable against the pension plan, is a matter determined in the first instance by the pension plan administrator, and, if necessary, by a court of competent jurisdiction.  *See* 29 U.S.C. § 1056(d)(3)(H)(i)."  (*Trustees of Directors Guild of America-Producer Pension Benefits Plans v. Tise* (9th Cir. 2000) 234 F.3d 415, 420-421.)  State courts are competent to make this determination.  (*In re Marriage of Oddino* (1997) 16 Cal.4th 67, 71.)

3

The Plan endeavored to assemble all of the interested parties in one forum after Rosalyn joined it to her dissolution proceedings. Invoking Family Code section 2063, subdivision (b), which provides in pertinent part that an employee benefit plan joined to a family law proceeding "may, but need not, file an appropriate responsive pleading with its notice of appearance," the Plan filed an interpleader in Rosalyn's divorce proceedings. In its interpleader, filed pursuant to California Code of Civil Procedure Section 386, the Plan alleged that it faced "multiple and conflicting claims for the same pension benefits." The Plan further alleged that it had no claim to the benefits, which it was prepared to deposit with the court. The Plan requested that the court order Ilunga, Rosalyn, and Terry to interplead and litigate their respective claims; restrain all three of them from instituting or further prosecuting any other proceedings in state court related to the contested benefits; discharge the Plan from any liability or obligation; and award the Plan its costs and reasonable attorneys' fees associated with the interpleader.

Terry opposed the interpleader on jurisdictional grounds. The trial court overruled her objections, commenting that it was authorized to divide interests in pension plans and did so "every day." The court ordered Ilunga, Rosalyn, and Terry to interplead and enjoined them from instituting or pursuing other claims pertaining to the contested benefits. Soon thereafter, the parties (including the Plan) stipulated that the Plan should make all payments authorized by Rosalyn's 2012 QDRO, leaving only the competing claims of Ilunga and Terry for resolution.

Ultimately, on summary judgment, the court concluded that Terry was entitled to receive 100 percent of the pension benefits remaining after Rosalyn's share was subtracted, but was not entitled to the payment structure she desired. The court entered a QDRO to that effect. Terry timely appealed.[4]

---

[4] The court stayed the Plan's motion for attorney's fees under Code of Civil Procedure section 386.6, subdivision (a) pending resolution of this appeal. We express no opinion on the merits of that motion.

# DISCUSSION

## I.      Issue Presented

In her opening brief, Terry contends that "the only issue" in this appeal is whether the state court had jurisdiction to hear the interpleader filed by the Plan.  We agree.  As the appealing party, Terry is responsible for identifying and articulating the issues she wishes us to resolve.  "It is well established that it is appellant's opening brief which controls the nature and number of issues presented on appeal." (*People v. Schoennauer* (1980) 103 Cal.App.3d 398, 406.)

Ilunga filed a brief in which he argues that "this Court is restricted from enforcing a QDRO that garnishes Appellee's . . . Pension Plan; or aggregated disposable income for more than 65 per centum to satisfy unpaid child support arrearages on a monthly pursuant to U.S.C. Section 1673 (2) (A) [*sic*]."  But he has not filed an appeal or cross-appeal. "As a general matter, 'a respondent who has not appealed from the judgment may not urge error on appeal.' [Citation.]" (*In re Estate of Powell* (2000) 83 Cal.App.4th 1434, 1439.)  "Code of Civil Procedure section 906 provides a limited exception 'to allow a respondent to assert a legal theory which may result in affirmance of the judgment.' [Citation.]" (*Ibid.*)  Here, however, Ilunga seeks reversal of the judgment and entry of a new judgment more favorable to him – a judgment pursuant to which Terry is entitled to receive only 65 percent rather than 100 percent of the monthly pension benefits that otherwise would be paid to him.  Having failed to appeal or cross-appeal, Ilunga cannot seek such affirmative relief. ~We accordingly do not consider his argument; we restrict our discussion to the issue properly presented by Terry.

## II.     Standard of Review

The existence of  jurisdiction is a legal question that we review de novo.  (*Saffer v. JP Morgan Chase Bank* (2014) 225 Cal.App.4th 1239, 1248; *Dial 800 v. Fesbinder* (2004) 118 Cal.App.4th 32, 42.)  We may consider this question regardless of the answer. (*Adams v. Pacific Bell Directory* (2003) 111 Cal.App.4th 93, 99.)

## III.  Analysis

Terry's sole contention on appeal is that the Plan is not permitted to file an interpleader in state court under any circumstances.  We reject this contention.

An interpleader is a procedural mechanism a party facing competing claims to money or property in its possession or control may employ to compel the claimants to interplead and litigate the claims among themselves.  (See Code Civ. Proc. § 386, subd. (b); see also 4 Witkin, Cal. Proc.  (5th ed. 2008) Pleading, § 237, p. 317; Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2015) ¶ 2:470.) Here, the Plan was confronted with three competing claims to the pension benefits in its custody:  those of Ilunga, Rosalyn, and Terry.  The three claimants – and the Plan – were divided between two separate family law proceedings.  Ilunga, Terry, and the Plan were parties to Terry's ongoing dissolution proceedings, while Ilunga, Rosalyn, and the Plan were parties to Rosalyn's. Terry rejected the court's suggestion that she move to consolidate the proceedings, and neither she nor Rosalyn sought to join the other to their respective dissolution proceedings under Family Code section 2021, subdivision (a) or California Rules of Court, rule 5.24(c)(1).  Because the Plan was merely a claimant in the dissolution proceedings and not a petitioner or respondent, it was not permitted to join Terry or Rosalyn to either ongoing dissolution proceeding.  (Cal. Rules of Court, rule 5.24(b), (c).)  The only procedural avenue available to the Plan to mitigate its risk of double litigation was an interpleader.

As Terry suggests, however, the Plan was precluded from initiating a new civil action in interpleader in state court.  Title 29 United States Code section 1132(e)(1) vests in federal courts exclusive jurisdiction of civil actions under ERISA "instigated by a fiduciary" like the Plan.  (*Aetna Life Ins. Co. v. Bayona* (2000) 223 F.3d 1030, 1033; see also *In re Marriage of Oddino*, *supra*, 16 Cal.4th at p. 79, fn. 6.)  The Plan's use of the interpleader procedure in this case was not prohibited by this provision because the Plan did not file a complaint in interpleader or otherwise bring, initiate, or instigate a civil action under Title 29 United States Code section 1132(a)(3) against any of the claimants

6

in state court. Instead, it filed its interpleader in response to being joined to Rosalyn's dissolution. Terry does not explain why a responsive filing filed in an ongoing proceeding such as that at issue here should be viewed as a civil action "brought by" (29 U.S.C. § 1132(e)(1)) or "instigated by" (*Aetna Life Ins. Co. v. Bayona*, *supra*, 223 F.3d at p. 1033) an ERISA fiduciary.

Family Code section 2063, subdivision (b) – which Terry does not address in her briefing – permits a benefits plan joined to dissolution proceedings to "file an appropriate responsive pleading with its notice of appearance." The statute does not clarify the filings which may constitute an "appropriate responsive pleading." We conclude that the unusual procedural posture of this case – two ongoing dissolutions with the Plan, but not all interested parties, joined to both – rendered an interpleader an "appropriate" response by the Plan upon its joinder to Rosalyn's dissolution proceeding. Just as a cross-complaint may be considered a proper "responsive pleading" in some contexts (see *Moorpark Unified School District v. Superior Court* (1990) 223 Cal.App.3d 954, 960), so too may the interpleader filed in the context of this case.

ERISA does not prevent state courts from dividing interests in retirement plans in the context of marital dissolution actions. (*In re Marriage of Baker* (1988) 204 Cal.App.3d 206, 209.) State courts enjoy a "virtually exclusive primacy" (*Ankenbrandt v. Richards* (1992) 504 U.S. 689, 714) in matters of domestic relations, and the proceedings here, which culminated in the issuance of a QDRO to Terry, were within the court's jurisdictional purview. As the family court observed, state courts divide interests in pension plans "every day," often in complex circumstances such as those presented here. The unusual sequence of events that precipitated the Plan's responsive interpleader and subsequent property division here does not change this result.

**DISPOSITION**

The judgment is affirmed.  The parties are to bear their own costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


COLLINS, J.


We concur:



WILLHITE, Acting P. J.



MANELLA, J.